# CHARLESTON.

## VINTROUX v. SIMMS.

### Submitted Sept, 20, 1898—Decided Dec. 7, 1898.

1. NEW TRIAL—*Verdict—Evidence.*

    Where the verdict of a jury is wholly without evidence on a point essential to a finding, or the evidence is plainly insufficient to warrant such finding by the jury, the same should be set aside and a new trial awarded.    (p. 552).

2. ADVERSE POSSESSION—*Boundaries—Interlock—Color of Title.*

    Where the claims asserted by adjoining landowners as to their respective boundaries are such as to cause an interlock, and either of the parties is in actual adverse possession of a part of the land claimed by him under his deed outside of the interlock, and the other is in actual adverse possession under color of title of the land embraced in the interlock or land in controversy, claiming under and to the limit of his deed, the latter will, in contemplation of law, be regarded as being in actual adverse possession of all the land in the interlock, not simply that actually occupied or enclosed by him.    (p. 553).

3. ADVERSE POSSESSION—*Interlock—Color of Title.*

> If such party actually in adverse possession of the interlock.
> under color of title retains such possession for ten years, he will
> be entitled to hold the same, although the other party may be in
> possession of his land outside of the interlock. (p. 553).

Error to Circuit Court, Putnam County.

Ejectment by C. A. Vintroux against W. H. Simms. There was a judgment for plaintiff, and defendant brings error.

*Reversed.*

WARTH & BRIGGS, for plaintiff in error.

BROWN, JACKSON & KNIGHT, W. R. GUNN, and RUFUS SWITZER, for defendant in error.

ENGLISH, JUDGE:

This was an action of ejectment brought in the circuit court of Putnam County by C. A. Vintroux against W. H. Simms to recover a certain tract of land described in the declaration as containing three hundred and eighty-four acres and described by metes and bounds. The question is one of boundary, and its solution requires the ascertainment of the true location of the division line between the lands of the plaintiff and defendant. On the 27th of May, 1896, it was ordered, by consent of parties by their attorneys, that G. F. Anderson, of Putnam County.and Thomas Matthews, of Kanawha County, be appointed to go upon the lands and do such surveying as either party might require, and return three fair plats and reports of said survey. On September 30, 1896. the general issue was pleaded, and on the 27th of May, 1897, the cause was submitted to a jury, which resulted in a verdict for the plaintiff. The defendant thereupon moved the court to set aside the verdict as being contrary to the law and the evidence and to award a new trial. This motion was overruled by the court, defendant excepted and took a bill of exceptions, judgment was rendered upon the verdict, and the defendant obtained this writ of error.

The defendant claims that the court erred in rejecting instruction No. 4 asked by him to be given to the jury upon the trial, which reads as follows : "The court instructs

the jury that in an action of ejectment the plaintiff cannot establish his own lines by running and locating the lines of the defendant's land, unless the plaintiff also show, to the satisfaction of the jury, that the plaintiff's and defendant's lands join along the disputed line or lines, and that unless they believe from the evidence in this case that the line from A to C, as laid down on the Matthews map in this action, is the line of the plaintiff's land as called for in her deed, they cannot find that as the true line between the plaintiff and the defendant." Now it surely was necessary as a prerequisite to recovery that the plaintiff should not only show a good title in herself, but that she should show by competent evidence that the calls of her deed embrace the land in controversy. The line on the map run by said Anderson and Matthews from A to C is claimed by the plaintiff to be the true line between herself and defendant, and the witness Anderson, in giving his testimony, states that A represent a known corner, and that he ran by the calls of plaintiff's deed from A to C; that he went to the corner at A, and, reversing the call of plaintiff's deed N. 5 deg. E. to S. 5 deg. W., and adding the variations he ran the course given, and it took him to C, and, having previously stated that he calculated the variation in the courses since 1838 and found it 2 deg. 54 min., and that by beginning at the dogwood corner at A and reversing the call N. 9 deg. 3 min. E. to S. 9 deg. 3 min. W. and following that course it brought him to C on the map, and, when asked on cross-examination to explain how he was able to make the line called for on the plaintiff's deed when run at a variation of S. 8 deg. W. from the dogwood corner at A bring him to the same point as the line of the defendant's deed which he ran S. 9 deg. 3 min. W., he replied, "I can't explain how or why it is, but it is so." His attention was also called to the fact that the earliest deed in plaintiff's chain of title giving the same course and distance as the plaintiff's deed along the line in controversy was the deed made in 1853 by Sam Lewis to W. T. and L. E. Vintroux. He was asked if he calculated any of the variations used by him in making his survey of the A—C line from that deed, and he replied, " I didn't know anything about such a deed; I was not shown it;"

and, when asked what would be the proper variation calcu-
lated from the difference of time between the date of the
deed from Lewis to Vintroux and the date of the survey of
1894, he replied that the variation would be about 3 min-
utes per year, or 2 degrees and 3 minutes for the whole
time, and that if the line of the plaintiff's deed arriving at
the dogwood A should be reversed and run according to
the mathematical variation, it would run to the left or east
side of the point C, but he could not say just where, with-
out instruments, as he had not run the line on that varia-
tion and did not know just where it would go; and when
handed instruments, and asked, if the line from A to C was
correctly laid down on the map as S. 9 deg. 3 min. W., to
show on the map approximately where a line would run on
a course S. 7 deg. 3 min. W., he replied that he could not
do it without additional instruments, and when handed the
instruments called for, replied he did not think they were
sufficiently accuate, and for that reason he could not tell
where the line would run.   When asked if it would not run
near the red line or the green line (the red being claimed
by the defendant as the true line), he replied he thought it
would run somewhere a little to the left of the red line, but
he could not tell exactly where.   When asked if the corner
established at K was not a compromise corner between
the plaintiff and Mr. Kirtly, who owned the adjoining land,
he said the corner at K was gone, "and I ran the two lines,
I have spoken of from A to K and from J to K, and they
both agreed to the corner which I established at the point
where I brought the lines together."   Now, it was a mat-
ter of vital importance, in properly adjusting the contro-
versy between the plaintiff and defendant, that the plain-
tiff's line running south fiom the point A should be cor-
rectly and accurately established, and yet the jury was
asked to determine this question, and did so in favor of
the plaintiff, reaching their conclusion as to the locality of
the plaintiff's line influenced largely, as we must believe,
by listening to testimony of the character above detailed
by the county surveyoı, who assisted in executing the or-
der of survey, who had been upon the land, and whose evi-
dence we must presume had a controlling influence upon
their verdict.   Considering, then, the character of this

testimony upon this vital point as to the proper location of said line, I regard said instruction No. 4 which was rejected by the court as pertinent and proper, and hold that the court erred in rejecting it. The testimony in the case shows that marked. trees were found along the line as run from A to C by Anderson, but nothing is shown as to the age of the marks, or by whom made, although other lines had been run in that locality at former periods. Can we, then, say there was any testimony before the jury of such character as would warrant them in definitely fixing and determining the true division line between the lands of plaintiff and defendant? This may be said to be a matter for the jury to determine, but can a jury ascertain matters of this kind in the absence of proper testimony? Surely not. In the case of *Beall* v. *Railway Co.*, 38 W. Va. 526, (18 S. E. 729, syl. point 2), it was held: "Where the verdict of a jury is wholly without evidence on a point essential to a finding, or the evidence is plainly insufficient to warrant such finding by the jury, the same should be set aside, and a new trial awarded." This, I think, states the law correctly.

Again.: The uncontradicted evidence of the defendant shows that for more than ten years he and those under whom he claims had held open, notorious, and uninterrupted possession of the land in controversy under color of title, which of itself would prevent the plaintiff from recovering in her action. On this question SNYDER, JUDGE, delivering the opinion of the Court in the case of *Core* v. *Faupel*, 24 W. Va. 242, says: "The effect of the statute is to render a continued adversary possession for 10 years conclusive in the action of ejectment. not only against the possession, but the title, of the true owner. The result is so absolute that such adversary possession operates as a transfer of the legal title, and is not only a sufficient defense on the part of the defendant, but a sufficient ground for the plaintiff to recover the land to which he has so acquired title, against the strongest proof of better title." At this point we may call attention to the evidence of Pat Miner, whose testimony is short, and who says: "I know where the clearing is out there on the hill next to the line between Mr. Simms and Mr. Vintroux. I cleared up

the ground and built the cabin and fence, myself, under a contract with Mr. Joe Simms, the father of W. H. Simms. He let me stay there two years, for the work I done. I left there and went to St. Albans to live. Mr. Simms showed me where to put the fence, so as not to get over the line, and I put the fence right where he showed me." This testimony clearly shows that Joseph Simms in his lifetime claimed to the red line, which the map shows near the cabin that Pat built, and just outside of the inclosure. John Grieser states in his testimony that he is acquainted with the clearing and improvement claimed by Simms in this suit; that he has known it for a long time,—he thinks about sixteen years; that the house and fence have been there ever since he has known it. Joseph Simms, as we have seen, was not only in possession of this land, but claimed it under color of title, and he would not therefore be limited to his inclosure. Section 19, chapter 90, of the Code provides that : "In a controversy affecting land, when a person claiming under a patent deed or other writing shall enter upon and take possession of any part of the land in controversy under such patent deed or other writing, for which some other person has the better title, such adversary possession under such patent deed or other writing shall be taken and held to the boundaries embraced or included by such patent deed or other writing, unless the person having the better title, shall have actual adverse possession of some part of the land embraced by such patent deed or other writing." See *Oney* v. *Clendenin*, 28 W. Va. 35 (Syl. point 4); *Ketchum* v. *Spurlock*, 34 W. Va. 597, (12 S. E. 832); *Industrial Co.* v. *Schultz*, 43 W. Va. 471, (27 S. E. 255, Syl. point 5); *Garrett* v. *Ramsey*, 26 W. Va. 345 ; *Congroves* v. *Burdett*, 28 W. Va. 220, (Syl. point 1),—in the latter of which the law is thus stated : "Where there is a lap or interlock of two deeds whereby both embrace the land in controversy, and the person having the elder deed or the title to the land is in actual possession of a part of his land outside of the interlock, and the person having the junior deed or color of title is in the actual adverse possession of the interlock, or land in controversy, claiming under and to the limits of his deed, the latter will in contemplation of law be regarded as being

in the actual adverse possession of all the land in the inter-
lock, not simply that actually occupied or enclosed by him."
The same law would apply if the party holding the elder
title was in possession claiming the interlock in the same
manner.     In view of the facts shown to have been proven
in this cause, and considering the authorities above cited,
my conclusion is that the circuit court erred in refusing to
set aside the verdict of the jury.     The judgment com-
plained of is therefore reversed, the verdict set aside, and
a new trial awarded.

*Reversed.*