# CHARLESTON.

HINTON MILLING COMPANY v. NEW RIVER MILLING COMPANY.

Submitted March 28, 1916.    Decided May 9, 1916.

1. APPEAL AND ERROR—*Presenting Questions in Trial Court—Necessity.*
   If error or supposed error of any sort, except errors in the pleadings appearing on the record, are committed by a court during the the trial of a case by a jury, the appellate court will not review such rulings, unless they were objected to and excepted to when made, and a new trial was asked for and refused by the trial court and the rulings excepted to noted on the record and made part of it. (p. 317).

2. SAME—*Presenting Questions in Trial Court—Motion for New Trial—Sufficiency.*
   A motion to set aside the verdict of the jury and grant a new trial which does not state the grounds upon which it is based, is not so defective as to deprive the person making the motion of the right to avail himself of such errors as he could have had the benefit of had they been stated in the motion, provided the errors complained of appear on the face of the record or are shown by special bills of exceptions, or by bill of exceptions certifying all the evidence and the rulings of the court in relation to the introduction or rejection of evidence on the trial, and that these errors are pointed out in the appellate court. (p. 318).

3. SAME—*Presenting Questions in Trial Court—Exceptions.*
   Where a bill of exceptions certifies all the evidence and shows in addition thereto the rulings of the trial court in admitting or

refusing to admit evidence upon the trial, and the exceptions thereto taken at the time, this court will consider such exceptions without special bills of exceptions thereto, provided the particular questions are specified distinctly in the record on the motion for a new trial, or in an assignment of error, or brief of counsel in this court, so that this court may readily and safely find the particular questions or evidence to which the exceptions relate, but this court will not consider such exceptions without such specification, although the bill of exceptions certifying the evidence notes them. (p. 319).

4.  SAME—*Bill of Exceptions—Purpose.*

The purpose of a bill of exceptions is to exhibit on the record the supposed mistakes of the trial court which do not appear on the record and could not otherwise be brought before an appellate court for review and correction if erroneous. (p. 320).

5.  TRIAL—*Instructions—Applicability of Case.*

Where an action of assumpsit is brought to recover damages for breach of a written lease of a mill and machinery therein, the property to be used by the lessee as a mill, and the lease contains no covenants as to the condition of the property at the time the lease takes effect, and there is no allegation in the declaration charging the defendant with damages on account of the defective conditions of the leased premises when the lease became effective, an instruction should not be given on motion of the plaintiff that, ''The Court instructs the jury that if they believe from the evidence that the Hinton Milling Company was conducting a general milling business of which the defendant had knowledge and executed the lease with the knowledge that the machinery was in a defective and improper condition of repair by general wear and tear, and did not repair the same, and the plaintiff was thereby occasioned a loss, then the defendant would be liable for the damages resulting to plaintiff.'' (p. 327).

6.  DAMAGES—*Breach of Lease—Speculative Profits.*

The defendant leased to the plaintiff its mill property and machinery for the term of five years and placed the plaintiff in possession. The lease contained a covenant requiring the lessor to repair ''any breaks not the result of negligence or unskillful operation.'' In an action by the plaintiff against the defendant for damages for the breach of the said contract, the defendant cannot reduce plaintiff's demand by way of recoupment for ''damages and injury to the trade and permanent business'' of the defendant, ''by reason of the unskillful and inferior character of the operation of the mill'' ''whereby the permanent custom of the mill was destroyed and the customers permanently driven off.'' The admission of the evidence by the court, at the instance of the

defendant against the objection of the plaintiff, to establish such recoupment, is reversible error.   (p. 325).

Error to Circuit Court, Summers County.

Action by the Hinton Milling Company against the New River Milling Company.   Judgment for defendant, and plaintiff brings error.

*Reversed, and new trial awarded.*

*R. F. Dunlap* and *Wm. H. Sawyers,* for plaintiff in error.

*T. N. Read,* for defendant in error.

MASON, JUDGE:

The Hinton Milling Company, a corporation, instituted an action in assumpsit against the New River Milling Company, a corporation, in the circuit court of Summers County.   There was a trial by a jury, and verdict for the defendant, and judgment on the verdict in favor of the defendant against the plaintiff for costs.   The plaintiff brought the case to this court for review.

We are met upon the threshold of this investigation with an important question of practice.   There was a motion for a new trial, which was overruled.   The motion does not specify the grounds for the motion.   The plaintiff simply moved to set aside the verdict and grant it a new trial, and excepted to the ruling of the court in refusing it.

Under our judiciary system it is highly important that some efficient and practical method be adopted by which causes may be carried from the trial court to an appellate court to be therein reviewed.   In suits heard upon writs of error no new matter can be introduced in the appellate court, and the same rule applies to appeals, except in that class of cases which are tried *de novo* in the appellate court.   A party asking to have his case reviewed by an appellate court upon a writ of error, must present to the appellate court the entire record, or so much thereof as may be necessary to enable the appellate court to pass on the alleged errors complained of. The pleadings and all orders and rulings in relation thereto are parts of the record.   No other rulings of the court made

during the trial or 'occurrences happening while the case is before the jury are parts of the record unless made so by some appropriate proceeding.

The first step in preparing a case for review upon writ of error in an appellate court, for erroneous rulings of the court while the case was before the jury, is the motion to set aside the verdict and grant a new trial. This is absolutely essential, unless the errors complained of relate to the pleadings. This is the well established law in this state, and so declared in numerous decisions of this court. In the case of *State* v. *Phares*, 24 W .Va. 657, it is said: "In a case tried by a jury, no matter how many exceptions are taken to rulings of the court made during the trial, unless a motion is made before the trial-court to set aside the verdict, and that motion is overruled, all such errors saved will by the appellate court be deemed to have been waived." "A new trial for errors committed during trial can only be had after motion made in the trial-court and overruled; and this court will not *ex mero motu* grant a new trial in case no such motion was made in the court below." Judge JOHNSON in delivering the opinion of the court adds, "of course it is different if the error is in the pleading." This case is very fully discussed and approved in *Danks* v. *Rodeheaver*, 26 W. Va. 274, in which the court in syllabus No. 1, says: "If errors or supposed errors are committed by a court in its rulings during the trial of a case by a jury, the appellate court cannot review these rulings, unless, first, they were objected to when made and the point saved and a bill of exceptions taken showing these rulings during the term of the court, and unless, second, a new trial was asked of the court below and refused, and such refusal objected to in the court below, and this appear of record. If either of these essentials is omitted, the appellate court can not review the rulings. It can not review them, unless bills of exceptions were taken to them as above stated, and a new trial was asked and refused, and in this bill of exceptions these rulings of the court during the trial are fully stated, and it appears, that they were erroneous, and that these erroneous rulings caused the jury to find the verdict, which they did find. Nor can the appellate court review such rulings by

the judges during the trial in any case, though they were ex-
cepted to when made, and regular bills of exceptions were
then taken, if no new trial was asked in the court below and
refused, and such refusal objected to, and this be noted in
the record.''

These cases were decided before the act of the Legislature
of 1891, amending the law in regard to certifying evidence,
and as will be hereinafter noted, this amendment made radi-
cal changes in relation to bills of exceptions, but none as to
the rulings requiring motions for new trials. It often hap-
pens that in the midst of a trial important and intricate ques-
tions of law are presented to the trial judge without time
or opportunity for investigation, and as a consequence errors
are committed. Upon a motion for a new trial, with time for
reflection, and aided by the argument of counsel supported
by authority, the judge would be able to correct a hasty opin-
ion expressed by him in the progress of the trial, and save the
delay, labor and expense of appealing to an appellate court.
Then, as it is absolutely necessary in such cases to ask the
trial court to set aside the verdict and grant a new trial be-
fore the case will be reviewed by the appellate court, what
should the motion include? In the case at bar, the motion was
simply to set aside the verdict and award a new trial, and the
refusal of the court to do so excepted to. Is that sufficient?

It is well settled in this state that the appellate court will
not review rulings of the trial court made during the trial by
a jury, unless the erroneous rulings are in some way specific-
ally pointed out and brought to the attention of the court,
but is it essential that this should be done in the motion for a
new trial? The practice in this state is to specify grounds
upon a motion to set aside a verdict and grant a new trial.
*Danks* v. *Rodeheaver, supra; Gregory* v. *Railroad Co.*, 37
W. Va. 606; *Hughes* v. *Frum,* 41 W. Va. 445. We do not
question the propriety of this practice; it is entirely proper;
but is the omission in the motion to state grounds fatal, where
the grounds for the motion otherwise appear?

Considering the fact that the act of the Legislature of 1891,
amending section 9, chapter 131 of the Code, authorizes the
certification of all the evidence, and as the court is now per-

mitted to use the notes of the stenographer in making the certificate of the evidence, we conclude that it is not essential that the motion to set aside a verdict and award a new trial should state the grounds upon which the motion is based, to save to the party making the motion the alleged errors noted in such bill of exceptions, certifying the evidence and the rulings of the court in receiving or rejecting evidence upon the trial. As we have already said the usual and better practice is to state grounds in the motion for a new trial, but it is not absolutely necessary where the errors appear on the face of the record or are made to appear by bills of exceptions taken in connection therewith and made parts of the record. However, when a motion is made to set aside a verdict and award a new trial, it is only fair to the trial judge that the grounds upon which the motion is based should in some way be made known to him, that he may be afforded an opportunity to review and correct his rulings by granting a new trial if he shall conclude that he has made mistakes upon the trial, and he may require this before acting upon the motion.

If the errors complained of do not appear upon the face of the record, how may they be made to appear so that an appellate court may consider them? We answer, that this may be done by proper bills of exceptions, in aid of the motion. "At common law a writ of error lay for an error in law, apparent on the record, or for an error in fact, where either party died before judgment; yet it lay not for error in law not appearing on the record, and therefore, where the plaintiff or demandant, tenant or defendant, alleged anything *ore tenus,* which was overruled by the judge, this could not be assigned, for error not appearing within the record, nor being an error in fact, but in law; and so the party grieved was without remedy." 2 Bacon's Abridgement, 112. To cure these defects of the common law the English statute Westminister 2 was enacted, providing for bills of exceptions. Westminister 2, 13 Edward I, chap. 31. This was the law at the time of the separation of this country from England, and being a general law, continued to be the law in Virginia until changed by statute.

"A bill of exceptions ought to be upon some point of law,

either in admitting or denying evidence, or a challenge, or some matter of law arising upon a fact not denied, in which either party is overruled by the court. If such bill be tendered, and the exceptions in it truly stated, the judges ought to set their seals in testimony that such exceptions were taken at the trial; but if the bill contain matters false, or untruly stated, or matters wherein they were not overruled, they. are not obliged to affix the seal. A bill of exceptions is not to draw the whole matter into examination again; it is only for a single point, and the truth of it can never be doubted after the bill is sealed, for the adverse party is concluded from averring the contrary, or supplying the omission of it." 2 Bacon's Abridgement, 113. *Taliaferro* v. *Franklin,* 1 Grat. 332; 4 Minor's Institutes, 897-8. The statute of Westminister 2, *supra,* was adopted in substance in Virginia, and in West Virginia with some variations, and remained in force in West Virginia until the statute of 1891, hereinafter referred to.

The purpose of a bill of exceptions is to exhibit upon the record the supposed mistakes of the trial court made during the trial which do not otherwise appear upon the record and which could not without the aid of some such device be brought before an appellate court for review and correction if erroneous. But "any party may avail himself of any error appearing on the record, by which he is prejudiced without excepting thereto." Section 9, chapter 131, Code. Hence, if the errors complained of appear on the face of the record, the appellate court will notice them without a formal bill of exceptions. Alleged errors in the pleadings, the verdict, and judgment thereon, or the judgment of the court where the jury is waived by the parties, or any other order that is made in the regular course of the trial, to the entering of which the opposite party objects, need not be certified by a bill of exceptions in order to make them parts of the record. In short, a bill of exceptions is only necessary when it is desired to preserve evidence, orders, rulings, and actions of the court, and occurrences happening during the trial, which would not otherwise be parts of the record, to the end that the rulings made by the court and the bills of exceptions when read together may portray as nearly as may be all that occurred in

the trial court. Instructions given or refused, not being spread upon the record, would not appear upon the face of the record and can only be made parts thereof by bills of exceptions.

The statute, chapter 114B, sections 1 and 2, of the Code, authorizing courts to employ shorthand reporters, and making the notes of the testimony taken by such reporters the ''best authority'', Acts of the Legislature of 1887, chapter 20, and Acts of the Legislature of 1891, chapter 100, amending section 9, chapter 131 of the Code, in relation to bills of exceptions, made very important and radical changes in the practice in the courts of this state in this regard. Prior to the act of 1891, *supra,* the trial court was required to certify the facts by special bill of exceptions. This was the only method provided by law for informing the appellate court of the testimony. By the act of 1891, it is provided that, ''In the trial of a case at law in which a writ of error or supersedeas lies to the court of appeals, a party may except to any action or opinion of the court and tender a bill of exceptions; and if the action or opinion of the court be upon any question involving the evidence or any part thereof, either upon a motion for a new trial or otherwise, the court shall certify all the evidence touching such question, and the judge shall sign any such bill of exceptions (if the truth of the case be fairly stated therein), and it shall be made a part of the record in the case, and the whole of the evidence so certified shall be considered by the court of appeals, both upon the application for and hearing of the writ of error and supersedeas.'' Sec. 9, ch. 131, Code.

Where the testimony is taken by a shorthand reporter, duly appointed and sworn, the report should be preserved *in extenso,* and made part of the record of the case by being incorporated into and made part of the bill of exceptions certifying the evidence. When there is a motion to set aside a verdict overruled and excepted to, and a bill of exceptions certifying all the evidence, such bill of exceptions will be considered by an appellate court without any other or special bill of exceptions, as to all facts properly certified therein. Where the certificate of evidence includes the notes of the shorthand

reporter, and such notes contain the rulings of the court in receiving or rejecting evidence during the trial, and exceptions made thereto at the time, such rulings may be noticed by the appellate court without special bills of exceptions, provided such rulings are specifically pointed out in the motion for a new trial, the assignment of errors, or brief of counsel but not otherwise. The party who objected to the rulings, and excepted, should have the benefit of his exceptions noted in the bill of exceptions of the evidence, but to do so he should be required to point out in some way to the appellate court the particular rulings to which he objects. The appellate court could not safely undertake to read the records of such trials and select the parts objected to, which are alleged to be erroneous. This court in the case of *Kay* v. *Railroad Co.*, 47 W. Va. 467, laid down the following rule for the guidance of the courts and litigants: "Where a stenographic report of the evidence is made part of the certificate of evidence upon a motion for a new trial, and it shows objections to questions or evidence, and rulings of the court thereon, and that such rulings were excepted to, and the particular question or evidence complained of is distinctly specified in the motion for a new trial, or in an assignment of error, or in brief of counsel, so that the appellate court can readily and safely find the particular question or evidence to which the exception relates, the appellate court will consider the matter excepted to, though there is no formal bill of exceptions thereto; but such matter will not be considered without such specification, even though such report of evidence notes such objection and exception." By following this rule the appellate court will have all the information, and in as accessible a form as it would have were the alleged errors spread upon the record on motion for a new trial or specified by special bills of exceptions. According to this ruling, while it is essential that there should be a motion in the trial court before the judgment is entered, to set aside the verdict and grant a new trial, and exception taken at the time, to the ruling of the trial court refusing to set aside the verdict, yet it is not essential that the motion should state the grounds upon which the motion is based, to save to the party making the motion

the alleged errors noted in such bill of exceptions, provided the rulings complained of are pointed out in the appellate court as hereinbefore indicated.

Some of our decisions may seem to indicate a different ruling from the views here expressed, but upon examination they will be found to apply to the phases of the particular cases then under consideration. The foregoing views are now expressed that there may be no confusion or misunderstanding among the profession or circuit courts upon the subject.

In the case at bar there is a bill of exceptions certifying all the evidence, containing the stenographer's notes as part thereof, certified and made part of the record. There is also a bill of exceptions containing an instruction asked for by the plaintiff and refused. The bill of exceptions shows many exceptions to rulings of the court during the trial upon the introduction of evidence. The appellant's petition for writ of error and its brief point out specifically the rulings complained of and relied on for reversal, so that the court's attention is called with certainty to the alleged errors which this court is asked to consider. Following the views herein expressed, we conclude that we may look to the bills of exceptions appearing in this record and decide whether or not error has been committed prejudicial to the appellant, in the introduction or rejection of evidence upon the trial, and whether or not the verdict is contrary to the evidence.

Briefly stated, the following are the errors relied upon by appellant: On the 31st day of January, 1910, the New River Milling Company, a corporation, leased to the Hinton Milling Company, a corporation, all its warehouses, buildings, and premises, situated in the city of Hinton, together with the use of all fixtures, engines, machinery, and implements, used and employed in carrying on the milling and merchandise business at the time being carried on by the lessor, for five years from February 1, 1910, at the yearly rental of $1500.00, to be paid in monthly installments of $125.00. Among the covenants agreed upon in said lease is the following on the part of the said New River Milling Company, referred to in the said lease as the party of the first part, namely: "Provided always that any breaks, not the result of negligence or un-

skillful operation on the part of the party of the second part, shall be repaired by the said party of the first part as soon as practicable, but no damage shall be claimed by reason of any such breakage or any accident to the machinery or building, or on account of any reasonable delay in replacing such broken parts or making such repairs, and no abatement in the rent shall be claimed for such reasonable delay. And that said party of the second part shall in no way be responsible or accountable for any loss or damage due to the general wear and tear, and the same shall be promptly made good, where necessary, by the said party of the first part, this to apply to both machinery and buildings.''

The following covenant, among others, on the part of the Hinton Milling Company, called in the lease the party of the second part, appears in the said agreement, namely: That ''the said party of the second part    *    *    *    shall bear all the expenses of the operation of the mill, including any minor repairs that may be found necessary from time to time, such as bolts, taps and things of like kind, and shall be responsible for and repair at its own expense, all damages or breakage which may result from negligence or the unskilled operation of the mill, that it will operate the mill, by a competent and skilled mechanic;    *    *    *    and at the expiration of the said term will remove its goods and effects and those of any party claiming under it, and peaceably yield up to the said party of the first part, its successor or assigns, the said premises in good repair, order and condition as to said building, damage by fire or other unavoidable casualty excepted.''

The Hinton Milling Company used the leased premises until May 18, 1912, when it moved to its own property. At February rules, 1914, plaintiff instituted this suit against the lessor, in assumpsit. In its declaration it recites said lease or agreement, and alleges many breaches of the covenants of the lease, on the part of the lessor. The defendant pleaded non-assumpsit, and filed, among others, the following items of recoupment:

''To damage and injury to the trade and permanent business of the New River Milling Company by reason of the unskillful and inferior character of the operation of the said

mill, whereby the permanent custom of the said mill was destroyed and injured and the customers permanently driven off, $2000.00.

"To the damage and injury caused to and sustained by the defendant by and on account of the closing down of the defendant's mill, by the plaintiff on or about the 18th day of May, 1912, and the intentional suspension of said mill, thus permanently diverting the trade and custom from the said mill to the mill in Avis owed by the plaintiff, and destroying and permanently injuring the usual and accustomed trade that had before that time dealt at the defendant's mill, which action was taken, designedly and with the unlawful purpose of destroying the ultimate completion of the said mill after the plaintiff's lease had expired, $2,000.00."

The plaintiff points out as errors committed upon the trial that witness Lee Walker was permitted to answer the following questions:

"Q. What effect, if any, did this method of operation have on the trade, if you know?

"A. Well, it had the effect of driving the trade away from the stand.

"Q. What effect did that have on the business of the mill?

"A. It would have a depreciating effect on the business of the mill.

"Q. Will you please state whether the business of the New River Milling Company has been damaged by these acts on the part of the Hinton Milling Company, during the continuance of this lease?

"A. Yes, sir, it has.

"Q. To what extent, and how?

"A. Well I should think we were damaged to the extent of four or five thousand dollars by reason of the stand not being kept up."

And in permitting John Richmond to answer the following questions:

"Q. And what effect did the fact of this operation of this mill in the way it was operated by the Hinton Milling Company, have on the business of the New River Milling Company, Mr. Richmond? •

"A. Well, it damaged their property, it is a damage to the property and business.

"Q. How much do you consider the property damaged by this character of treatment of the machinery, as you have stated?

"A. Well, it has caused considerable expense, repairing and trouble, and I couldn't state just exactly what the expense would be.

"Q. What has become of the trade of the New River Milling Company, if it ever had any?

"A. Well, of course, they had no demand for trade there only the time they run the two cars. We have not had anything to sell only the two cars."

And in permitting H. Ewart to answer the following questions:

"Q. I will ask you, Mr. Ewart, to state whether or not the business reputation of the mill of the New River Milling Company has been affected in any way by the operation of the Hinton Milling Company under this lease?

"A. I think it has; yes sir.

"Q. Tell how the conduct of it by the Hinton Milling Company damaged the New River Milling Company's business, if it did?

"A. Well, the New River Milling Company was conducting a business down there and were having a reasonably profitable business. They have no trade now and they have no business, and if they start into the milling business there again, it has all got to be built up in competition with a business there that has become firmly established in the three or four years that this other business has not been operated."

These questions and answers thereto were objected to by the plaintiff at the time, and permitted by the court to be answered, and objections noted. These questions and answers were permitted for the purpose of establishing the notice of recoupment filed by the defendant. It was an effort to prove in a general way damages sustained by the defendant by loss of trade in the business. The plaintiff was in possession of the defendant's mill, under a five years lease, and as a matter of course was under no obligation to maintain the defendant's

trade in the meantime—could not well do so. And the defendant bound itself in said lease not to, at any time during the continuance of the contract, either directly or indirectly, carry on the same trade or buisness in the city of Hinton or within a distance of twenty miles thereof. The trade during the time belonged to the plaintiff. In addition to this it does not appear that the New River Milling Company had any established trade. The answers to the questions were necessarily based upon mere speculative profits, without any reliable source upon which to found them. These questions and answers were improper, and constitute reversible error.

The plaintiff complains that the following instruction asked for by it was refused by the court: "The Court instructs the Jury that if they believe from the evidence that the Hinton Milling Company was conducting a general milling business of which the defendant had knowledge and executed the lease with the knowledge that the machinery was in a defective and improper condition of repair by general wear and tear, and did not repair the same, and the plaintiff was occasioned a loss, then the defendant would be liable for the damage resulting to plaintiff."

This was not a proper instruction. By the contract between the parties it is agreed that "any breaks, not the result of negligence or unskillful operation on the part of the party of the second part, shall be repaired by the said party of the first part as soon as practicable." "And that said party of the second part shall in no way be responsible or accountable for any loss or damage due to the general wear and tear, and same shall be promptly made good, where necessary, by the said party of the second part, this to apply to both machinery and buildings." It will be observed that these covenants apply to things to be done after the lease took effect. There is no covenant as to the present condition of the property. The instruction refers to the condition of the property at the time the lease was made. Knowledge of the defective condition of the machinery by the lessor would not impose on it the duty to repair, in the absence of a contract to do so, unless the lessee was ignorant of the fact and was deceived

thereby; and in such case the pleadings would have to state a case, so charging the lessor.

The plaintiff assigns as error the rulings of the court in permitting to be answered by defendant's witness J. A. Cox, question No. 55, as to the condition of the mill in August, 1914, and the same in effect as to the broken condition of some of the parts of the machinery in August, 1914. This witness had examined the mill several times, before and after the plaintiff gave up the mill. It was not error to permit him to testify as to these facts. Exceptions were taken to the testimony of witness Lee Walker, claiming that he had not sufficient experience in the use of gas engines to qualify him to testify. This exception is not well taken.

Plaintiff also insists that the judge who presided at the trial was incompetent to hear the case, by reason of his brother being a stockholder and assistant manager of the defendant company at the same time. This question is raised by an affidavit lodged in the case and printed with the record, but not made part of the record. No objections were made to the judge until after the verdict, and then only by an affidavit found in the papers—a mere stray paper. It may not be improper to add that if what is said in the affidavit be true, the judge would be ineligible under the acts of the Legislature, chapter 70, Acts of 1915; but that act was passed after this trial was had, and does not apply to this case.

On account of the error of the circuit court in permitting the defendant to prove damages arising by loss of trade in its business, the judgment of the circuit court will have to be reversed and a new trial awarded.

*Reversed, and new trial awarded.*