# CHARLESTON.

ROBERT PENIX v. JAMES GRAFTON *et al.*

Submitted April 15, 1920.     Decided April 27, 1920.

1. EXCEPTIONS,BILL OF—*Purpose Bill Stated.*

   The purpose of a bill of exceptions is to exhibit the supposed mistakes of the trial court which do not appear upon the record, and which cannot otherwise be brought before an appellate court for review and correction if erroneous. (p. 280).

2. APPEAL AND ERROR—*Bill of Exceptions not Necessary to Bring up Orders and Judgments.*

   There is no necessity for a bill of exceptions to make part of the record the orders and judgments of the trial court, inasmuch as they are already part thereof. (p. 280).

3.   Same—*Bill of Exceptions Signed Within Thirty Days From Judgment Held Taken Within Thirty Days from Adjournment of Term.*

Where the order filing a bill of exceptions shows that the same was signed less than thirty days from the date of the entry of the final judgment, it sufficiently appears that the bill of exceptions was taken within thirty days from the adjournment of the term at which the judgment was rendered, notwithstanding neither the bill of exceptions nor the order filing it expressly states this to be the fact. (p. 280).

4.   Trial—*Instructions, Though Correct, Erroneous When not Supported by Evidence.*

It is error to give instructions to the jury, even though they state correct propositions of law, where there is no evidence to support some of the hypotheses which they contain. (p. 282).

5.   Same—*Inconsistent Instructions Should not be Given.*

It is error to give inconsistent instructions, inasmuch as the jury are left to determine which theory of the law, as thus presented, is correct, and renders it impossible for the court to determine upon what legal principle the verdict is founded. (p. 283).

6.   Same—*Binding Instructions Should not be Given Without Requiring Finding on Theory of Defense.*

It is error to give a binding instruction in favor of the plaintiff which does not require a finding by the jury upon a theory of defense which is presented and supported by evidence, unless such instruction requires a finding by the jury which would make such theory of defense inapplicable to the case. (p. 283).

7.   Same—*Binding Instructions Must Require Finding on Every Necessary Hypothesis.*

A binding instruction must require a finding by the jury upon every hypothesis which is necessary to justify a recovery. (p. 283).

Error to Circuit Court, Fayette County.

Action by Robert Penix against James Grafton and others. Judgment for plaintiff, and defendants bring error.

*Reversed, verdict set aside and remanded.*

*Dillon & Nuckolls,* for plaintiffs in error.

*J. L. Ryan, McClung & Myles* and *Thos. P. Ryan* for defendant in error.

RITZ, JUDGE:

This writ of error brings up for review a judgment of the circuit court of Fayette county in favor of the plaintiff, rendered upon the verdict of a jury in an action of assumpsit.

At the threshold we are met with a motion to dismiss the writ of error as improvidently awarded, several grounds being assgined therefor, some of which have, however, been cured by the return to a writ of *certiorari* awarded herein. Two of the grounds insisted upon are: first, that the judgment of the circuit court cannot be considered because it is not made part of the record by any bill of exceptions, and only appears in the final order of the court; and, second, that the record does not show that the bill of exceptions was signed within thirty days from the adjournment of the term at which the judgment was rendered. So far as the first ground is concerned it is without merit. The function and purpose of a bill of exceptions is to disclose the supposed errors which were committed by the court during the trial of the case which do not appear in the record already made. *Hinton Milling Co.* v. *New River Milling Co.*, 78 W. Va., 314. It would be entirely supererogatory to bring into the record as part thereof by bill of exceptions those things which are already part thereof, such as orders or judgments of the court, or the pleadings which have been filed in the case. The second ground for dismissing the writ is likewise without merit. The record shows that the final judgment was entered on the 27th of March, 1919, at a regular term of the circuit court in session on that day, and while the order recites that the questions arising on the motion were submitted on the 22nd of March, and the bill of exceptions not taken till the 24th of April, still this judgment order clearly shows that it was entered on the 27th of March, or less than thirty days before the bill of exceptions was taken and filed. But even if it could be considered that the judgment was entered as of the 22nd of March, still the order clearly shows that the court was still in session on the 27th, which was less than thirty days from the date upon which the bill of exceptions was filed, as shown by the order filing the same.

The controversy out of which this suit grows is over the value

of services claimed to have been rendered by the plaintiff for the defendants.. On the 19th of April, 1917, the plaintiff and one F. H. Brazie entered into a contract with the defendant James Grafton by which they undertook and agreed to furnish all of the walnut logs that could be acquired by them to the said Grafton, at prices therein mentioned, the quantity furnished not to be less than three carloads. The plaintiff claims that after this contract was entered into Grafton came to Fayetteville and requested the plaintiff to secure the interest of Brazie in the contract, and upon his replying that he did not have the money to buy Brazie out Grafton told him that he would furnish the money if he, Penix, would acquire Brazie's interest. Acting upon this he bought Brazie's interest in the contract, and Grafton paid the money, and by writing endorsed on the contract Brazie was released from its performance, and Penix substituted in lieu of himself and Brazie. Plaintiff says that the defendant Grafton then told him to disregard the contract and consider it at an end; that he wanted the logs gotten out quickly; that he was under a heavy bond to the British government to furnish the lumber at once; and told him if he would go to work for him, regardless of the contract, and hunt up all of the walnut timber that could be secured, and have it hauled to certain mills, to be cut, that he would be well paid for his services; and that, acting upon this, he did go to work and secure a large amount of walnut timber, amounting in the aggregate to about three or four carloads, and that he never received anything for his services, and claims that he is entitled to receive reasonable compensation therefor, and fixes such charge at three dollars per day. He states that the arrangement through which the contract was set aside and abrogated was made in the presence of the defendant Lanham and the said Brazie. Brazie testifies equivocally in the case, his answer being susceptible of a construction supporting the plaintiff, and also susceptible to another construction contradicting the plaintiff's contention. Both of the defendants deny that there was such an arrangement, and insist that whatever timber was furnished by Penix was furnished under and by virtue of the terms of the contract. There are many circumstances in the case tending to support Penix's contention, and a great many tending to support the contention of the defendants. It is ad-

mitted that if Penix furnished these logs under the contract then he has been overpaid by reason of payments made by Grafton to the owners of the timber, and for the expense of cutting and hauling it to the railroad, but if, on the other hand, he was employed by Grafton, as he states, then he has received nothing for his services. It will thus be seen that the sole question is whether or not the logs were furnished under the contract, or whether Penix was an employe of the defendants, to be paid reasonable wages for his services.

This suit was brought by Penix against the two defendants Grafton and Lanham, upon the theory that he was their employe, and that he did not procure the walnut logs furnished by him under the contract, while the defense to the suit is that they were furnished under the contract, and inasmuch as more than enough money has been paid to meet the obligations arising because of the furnishing of the logs, if they were furnished under the contract, there is no right of recovery. It may be said in passing that there would seem to be no reason in the world for joining Lanham as a defendant in this suit. It is shown without dispute that he was simply the employe of the defendant Grafton, and whatever the arrangement may have been with Penix, the opposite contracting party was Grafton, and not Grafton and Lanham. Nor can his joinder as a defendant be justified upon the ground that the defendants held themselves out as jointly interested, for the plaintiff himself testifies that it was his understanding that Lanham was Grafton's employe, and that he never had any reason to believe otherwise. Under this state of facts, of course, there was no right to recover against Lanham, for it is too well established to require the citation of authority that where an agent acts within the scope of his authority for a known principal he incurs no personal liability.

Upon the trial of the case the court gave on behalf of the plaintiff certain instructions which are complained of. Some of these instructions told the jury that if they found from the evidence that Penix performed services for the defendants he was entitled to recover the reasonable value of such services. It is objected that these instructions are improper, not only because they told the jury that they might find a verdict against the de-

fendant Lanham, against whom there is no evidence, but also because they entirely ignore Grafton's defense. They permit a recovery; in fact, they bind the jury to find for the plaintiff if they find that he performed services for the defendants, and that he performed these services for the defendant Grafton, at his request, is undisputed. So that these instructions were in effect mandatory. So far as Lanham is concerned it was error to give the instructions because there was no evidence upon which to base them, and it is well settled that an instruction should not be given unless there is evidence of the hypothesis therein stated. This objection, however, it may be said, only applies to Lanham. While there is no evidence to justify the giving of the instructions so far as he is concerned, there is evidence on the part of the plaintiff supporting his theory of the case against the defendant Grafton. But the vice of these instructions, so far as the defendant Grafton is concerned, is that they entirely ignore his defense. An instruction which binds the jury to find for the plaintiff which ignores a substantial defense supported by evidence should not be given. In other words, in order to make a binding instruction proper it should include in it every hypothesis which the jury is required to find in order to such a recovery. In this case the jury could not find for the plaintiff unless they also found that the walnut logs furnished by Penix were not furnished under the contract, and that the contract had been abrogated upon a sufficient inducement by the mutual consent of the parties. An instruction given for the defendant presents this theory of the case, but it is in direct conflict with the instructions given for the plaintiff. It is improper to give instructions for the respective sides to the controversy which are in direct conflict with each other, for it allows the jury to select which of the instructions it will follow, and leaves the court in doubt and uncertainty as to what facts were actually found by the jury as a basis for their verdict. *Mylius* v. *Lumber Co.,* 69 W. Va. 346; *Parkersburg Industrial Co.* v. *Schultz,* 43 W. Va., 470; *Ward* v. *Brown,* 53 W. Va., 227; *McMechen* v. *McMechen,* 17 W. Va. 683; *McKelvey* v. *Chesapeake & Ohio Railway Co.,* 35 W. Va., 500.

It is urged by the defendant Grafton that the evidence sub-

mitted by the plaintiff was insufficient to justify the finding of the jury in favor of the plaintiff, and we are asked to so hold. In view of the fact that the case must go back for a retrial for the errors above pointed out it would be improper for us to make any comment at this time upon the weight of the evidence offered by either of the parties. On another trial it may be different, or may be supplemented so that any comment on it in its present shape might be entirely inapplicable to the presentation made on such new trial.

For the reasons above pointed out the judgment of the circuit court complained of will be reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed, verdict set aside, and remanded.*