STATE OF WEST VIRGINIA

*v.*

FLOYD I. MORRIS

(No. 10804)

Submitted October 2, 1956.   Decided December 4, 1956.

304

A. G. *Mathews, Stanley D'Orazio,* for plaintiff in error.

*John G. Fox,* Attorney General, *Giles D. H. Snyder,* Assistant Attorney General, for defendant in error.

HAYMOND, JUDGE:

At the November Term, 1954, of the Circuit Court of Calhoun County, the defendant, Floyd I. Morris, was indicted for the murder of Charles D. Weekley in October, 1954, in that county. The first trial upon the indictment, which was held during the April Term, 1955, of the circuit court of that county, ended in a mistrial which resulted from the failure of the jury to agree upon a verdict. At the second trial, during the August Term, 1955, of that court, the jury found the defendant guilty of murder of the first degree as charged in the indictment with the recommendation that the defendant be punished by confinement in the penitentiary of this State. The circuit court overruled the motion of the defendant to set aside the verdict of the jury and award the defendant a new trial and by final judgment entered August 18, 1955, sentenced the defendant to confinement in the penitentiary of this State during the term of his natural life. To that judgment this Court granted this writ of error on March 5, 1956, upon the petition of the defendant.

The affray which resulted in the homicide for which the defendant was indicted occurred shortly before midnight of Saturday, October 2, 1954, at a roadside tavern known as Do Drop Inn operated by a man named John Vincent, located on West Virginia Route No. 16, near the village of Stinson, which is approximately ten miles south of Arnoldsburg, in Calhoun County, in this State.

The defendant was about sixty three years of age and had been a resident of Calhoun County for many years. On October 1, 1954, he was discharged from Pinecrest Sanitarium at Beckley, West Virginia, where he had been a tuberculosis patient for a period of thirteen and a half months immediately preceding his discharge from that institution. He spent that night at the home of one of his nieces which is near Ivydale, Clay County, West Virginia, about ten miles south of Stinson, and remained there until about seven o'clock in the evening of Saturday, October 2, 1954, when, in company with his brother and his son-in-law, he went to the Do Drop Inn. There he met a man named Goldie Murphy and together they went in Murphy's automobile to the home of Ella Morris, a sister-in-law of the defendant, where they planned later to attend a dance at the inn. They then went to a beer parlor known as Ricky's Place near Arnoldsburg where they met Otha Drake and Madge Murphy. After staying a short time at Ricky's Place the defendant, Goldie Murphy, Ella Morris, Otha Drake and Madge Murphy went in the automobile driven by Goldie Murphy to the home of Woodrow Murphy near Orma where they were joined by Cora Murphy and from that place they proceeded to the Do Drop Inn where the defendant arrived about nine o'clock that evening. During his travels before he returned to the Do Drop Inn the defendant had three drinks of whisky and during his stay there, after his second arrival, he drank "two or three beers."

Charles D. Weekley, who at the time of the homicide was a young married man twenty six years of age, six feet in height and whose weight was about one hundred ninety pounds, accompanied by Doris Postlewaite and another couple, went in his father's truck from Ivydale to the Do Drop Inn where he arrived about ten thirty o'clock that evening.

While the defendant and Weekley were at the Do Drop Inn a dance was in progress and the crowd in attendance consisted of approximately one hundred twenty five people.

The building in which the activities of the inn were conducted is a one story frame structure which fronts on West Virginia Route No. 16. It consists of two large rooms separated by a partition which contains a doorway between the two rooms. The large room to the left of the front entrance to the inn was used as a dance hall and the room which extends to the right of the main entrance was used as a beer parlor. This room contains a bar, which is located immediately to the right of the main entrance and extends parallel with the front side of the building, and two rows of booths. Each booth contains a table and two double seats. One of the rows of booths is located along and parallel with the rear side of the room and the other row of booths, which is parallel with the bar, is located between the bar and the row of booths along the rear side of the room. There are aisles between the two rows of booths and the bar and these aisles extend the entire length of the room.

The evidence shows that while they were at the inn both the defendant and Weekley were to some degree intoxicated; that they had been acquainted with each other for several years; and that they had not had any prior quarrels or disagreements. The evidence does not disclose that either made or uttered any threat against the other, or that Weekley was armed with any dangerous or deadly weapon.

Shortly before midnight and after the defendant had spent some time talking with different persons in the crowd at the inn, he was standing near the front entrance to the inn a few feet from the bar and the door in the partition between the dance hall and the beer parlor. His twenty year old grand nephew, Raymond Cadle, with whom the defendant had been talking, was standing near the defendant who held in his hand a partially filled beer bottle some of the contents of which he had been drinking. At that time Weekley approached the defendant and, according to the testimony of Cadle, twice pulled the defendant's hat down over his face and grabbed him on both sides of his head. The defendant testified that

Weekley suddenly approached the defendant, pulled his hat down over his face four or five times and hit his ear. Weekley then turned away from the defendant and as he did so the defendant struck him near his left ear with the beer bottle. The force of the blow broke the bottle. Cadle testified that Weekley "kind of sunk down a little" because of the blow and that the defendant "went at him with his fist and they grabbed each other." In the scuffle which ensued both fell to the floor with Weekley on top of the defendant. Madge Murphy and Cora Murphy pulled Weekley off the defendant, who arose from the floor, and he and the Murphy women went to the second booth from the dance hall in the row located along the rear side of the room.

After the fight near the bar had ended the proprietor of the inn talked to Weekley and asked him to leave the inn. Weekley told him that he wanted to see the defendant and find out why he had hit him with the beer bottle. Weekley then agreed to leave and with his female companion started toward the door. He did not leave, however, but went to a booth occupied by a man and his wife which was next to the booth in which the defendant and his companions were then sitting. The man in the booth with his wife testified that Weekley asked him two or three times if he knew why the defendant had hit him, that he replied that he did not know, and that he and his wife left the booth and went near the bar because Weekley and the defendant had had one fight and he wanted to get his wife "out of the way" and "took her over close to the bar."

The proprietor testified that when the defendant got up from the floor he took a knife from his pocket; that he asked the defendant to give him the knife or to put it in his pocket; and that the defendant said that he would put it in his pocket. He also testified that when he asked Weekley to leave the inn he told Weekley that the defendant had a knife and that Weekley could see the defendant later and find out why he had hit him. No witness except the proprietor and Carl Mollohan, whose evidence on that

point is not clear, testified that he saw a knife in the possession of the defendant while this fight was in progress. The defendant admitted that he had a pen knife which he had owned for several years in his pocket when this fight occurred but he denied that he had it in his hand during the fight. The defendant also stated that he hit Weekley with the beer bottle because he was afraid of Weekley and because Weekley had assaulted him.

Within five minutes to fifteen minutes after the fight near the bar had ended Weekley went to the booth where the defendant, the Murphy women and the husband of one of them were seated and according to the testimony of the defendant, which is not contradicted, grabbed the front of his shirt, hit him in the chest and jerked him from the booth and across the corner of the table; that the defendant then drew his knife and stabbed Weekley; that when the defendant stabbed Weekley he released his grip of the defendant and left the booth where the second fight occurred; and that the second fight "didn't last very long all the way through." No witness gives a clear version of the manner in which the second fight started but it appears from the evidence that Weekley held one arm or hand of the defendant during the scuffle; that while it was in progress Madge Murphy struck Weekley a violent blow on the top of his head with a coca-cola bottle; that after he was struck with that bottle he "sank" or "sagged down"; and that there was blood on his head and his shirt. When this second fight ended Weekley walked from the booth through the aisle and out the front entrance to the inn where he fell to the ground several feet from the door and died within a few minutes after he was stabbed by the defendant. The wound inflicted by the defendant made an opening in the right ventricle of Weekley's heart and caused his death, according to the testimony of the doctor who on October 27, 1954, performed an autopsy after the body had been disinterred for that purpose.

After the defendant stabbed Weekley the defendant

remained in or just outside the inn for a few minutes. One witness testified that when the defendant was outside the inn he told Goldie Murphy not to tell anything, that Murphy said "Floyd, you should never have done that"; and that at that time the defendant had a beer bottle and a knife in his hand. The defendant then left the inn with the two Murphy women and Goldie Murphy and went to the home of Preston Morris, a brother of the defendant, at Stinson where he was arrested by a member of the West Virginia Department of Public Safety about two o'clock in the morning of October 3, 1954. When arrested the defendant had the pen knife in his possession and there was blood on one of its three blades.

The defendant testified that he entertained no ill will or malice toward Weekley and when asked on cross-examination why he had stabbed him gave this answer: "Just why I done it is because he come back and tackled me the second time and my nerves were run out and I was scared of him doing me bodily injury and I done it in self-defense because I knew I wasn't able to fight him."

The defendant assigns as error the action of the circuit court (1) in admitting, over the objection of the defendant, certain evidence offered in behalf of the State; (2) in refusing to admit certain evidence offered in behalf of the defendant; (3) in giving, over objection of the defendant, Instructions Nos. 3, 4, and 6 offered by the State; and (4) in refusing to set aside the verdict of the jury and grant the defendant a new trial because the verdict is without evidence to support it and because the evidence fails to show any malice upon the part of the defendant.

The evidence which was admitted or excluded by the circuit court is not specifically set forth as a ground of the motion of the defendant to set aside the verdict and grant a new trial, is not incorporated in a special bill of exceptions or the assignments of error in the petition to this Court for a writ of error, is not set forth in the brief of the attorneys for the defendant, and is not other-

wise specifically brought to the attention of this Court, as provided by Section 37, Article 6, Chapter 56, Code, 1931. Though the assignments of error refer generally to certain evidence which was admitted over the objection of the defendant and to certain evidence in behalf of the defendant which was excluded, they do not in any wise indicate or identify the evidence admitted or the evidence excluded. For these reasons the alleged errors in the ruling of the circuit court, in admitting and excluding the evidence, of which the defendant complains, must be deemed to have been waived by the defendant and they will not be considered or reviewed by this Court upon this writ of error. See point 5, syllabus, *State* v. *Bragg*, 140 W. Va. 585, 87 S. E. 2d 689; point 3, syllabus, *Hinton Milling Company* v. *New River Milling Company*, 78 W. Va. 314, 88 S. E. 1079.

Instructions Nos. 3, 4, and 6, offered by the State and given by the circuit court over the objection of the defendant, related to the crime of murder of the first degree or the crime of murder of the second degree.

Instruction No. 3 told the jury that to constitute wilful, deliberate and premeditated killing amounting to murder of the first degree, it is not necessary that an intent to kill should exist for any particular length of time prior to the actual killing and that it is only necessary that such intention should exist for the first time at or prior to the time of such killing.

Instruction No. 4 was expressed in this language: "The court instructs the jury that a man is presumed to intend that which he does or which *he* is the immediate or necessary consequences of his own act, and if they believe beyond all reasonable doubt that the defendant, Floyd I. Morris, with a deadly weapon in his possession, to-wit, a knife, without any or upon very slight provocation, gave the deceased, Charles Weekley, a mortal wound with said deadly weapon, he, the said defendant, is guilty of wilful, deliberate and premeditated killing, and the necessity rests upon the said defendant *or* showing ex-

tenuating circumstances, and unless the said defendant proves such extenuating circumstances, or the circumstances appear from the case made by the state, he is guilty of murder of the first degree."

Instruction No. 6 told the jury that if it should find the defendant guilty of murder as charged in the indictment it should further find whether he is guilty of murder of the first or second degree and informed the jury, if it should find the defendant guilty of murder of the first degree, of the sentence to be imposed and the punishment to be inflicted if the jury in its discretion should or should not find that the defendant be punished by confinement in the penitentiary, and further informed the jury of the sentence to be imposed if it should find the defendant guilty of murder of the second degree.

Whether the circuit court erred in giving all or any of the foregoing instructions depends upon the sufficiency of the evidence to sustain the instructions and the sufficiency of the evidence to support a verdict of murder of the first or second degree.

The evidence shows clearly that Weekley was the aggressor and the assailant in each of the two fights which occurred between him and the defendant and which followed each other within a period of five minutes to fifteen minutes. If he had not started either fight, especially the second one, the homicide which followed would not have occurred. Prior to the occurrence of the first fight the defendant had caused no trouble or disturbance and though he was to some extent under the influence of the whisky and the beer which he admitted he drank he was conducting himself in a peaceable manner when suddenly and without any provocation whatsoever by him Weekley assaulted him without cause or justification. Though the defendant struck Weekley a counter blow with the beer bottle with more force than in the light of subsequent events was necessary to repel the battery, the defendant, because of his impaired health and unequal strength due to his long illness and his advanced

age, could not cope with his assailant and was unable to defend himself without the use of a weapon which would enable him to protect himself against his younger, larger, and more powerful antagonist, who was then under the influence of intoxicating liquor. It also appears that the defendant, in the circumstances attending the first fight, struck Weekley with the bottle because he feared him and because he had been assaulted.

The evidence also shows that after the first encounter had ended the defendant withdrew and went to a booth in another part of the room which was at least several feet from the scene of the trouble; that while he was in the booth during the intervening period of five minutes to fifteen minutes the defendant did nothing to invite or provoke the second battery; and that Weekley, after having been requested to leave the inn went to a booth near that occupied by the defendant and after talking to the man who with his wife was in that booth and withdrew from it because he thought Weekley would become involved in further trouble, proceeded to the booth where the defendant was sitting and, without any provocation by the defendant or any cause or justification whatsoever, again assaulted the defendant while he was seated in the booth, struck him in the chest and seized his hand or his arm. In defending himself and to repel this unprovoked second assault the defendant inflicted the fatal wound because, as he testified, Weekley had come back and attacked him a second time, and because the defendant feared that he would sustain bodily injury at the hands of his assailant and knew that he was incapable of defending himself against him. The evidence does not disclose that either the defendant or Weekley at any time previous to the first affray entertained any ill will or malice toward the other, or that the defendant at any time made or uttered any threat against Weekley. The testimony of the defendant was that he entertained no malice against Weekley.

The evidence does not establish deliberation, premeditation or malice, either express or implied, or warrant an

inference of deliberation, premeditation or malice, upon the part of the defendant in killing Weekley who without provocation twice assaulted him, or show that the defendant gave Weekley a mortal wound without any or upon slight provocation. On the contrary, the evidence shows that the defendant was subjected by Weekley to grave provocation and was placed by him in danger of great bodily injury.

Malice express or implied is an essential element of murder of the first or second degree. *State* v. *Hurst,* 93 W. Va. 222, 116 S. E. 248; *State* v. *Ponce,* 124 W. Va. 126, 19 S. E. 2d 221; *State* v. *Cassim,* 112 W. Va. 92, 163 S. E. 769; *State* v. *Roush,* 95 W. Va. 132, 120 S. E. 304; *State* v. *Galford,* 87 W. Va. 358, 105 S. E. 237; *State* v. *Panetta,* 85 W. Va. 212, 101 S. E. 360; *State* v. *Douglass,* 28 W. Va. 297. This Court has said that malice implies "a mind under the sway of reason." *State* v. *Ponce,* 124 W. Va. 126, 19 S. E. 2d 221; *State* v. *Galford,* 87 W. Va. 358, 105 S. E. 237.

Malice may be implied from the use of a deadly weapon. *State* v. *Cassim,* 112 W. Va. 92, 163 S. E. 769. The presumption of malice may, however, be rebutted by showing mitigating circumstances, by excuse, by the testimony of the accused that he did not intend to kill, or by any evidence other than that which proves the killing. *State* v. *Cassim,* 112 W. Va. 92, 163 S. E. 769. When an affray is provoked by the deceased, the use of a deadly weapon by the defendant in killing the deceased will not give rise to a presumption of malice. *State* v. *Cassim,* 112 W. Va. 92, 163 S. E. 769; *State* v. *Galford,* 87 W. Va. 358, 105 S. E. 237.

In *State* v. *Galford,* 87 W. Va. 358, 105 S. E. 237, this Court, discussing malice as an essential element of murder, used this language: "If this element be lacking, the killing is not murder, if an offense at all. This term, it has been said, implies a mind under the sway of reason. It excludes the idea of sudden passion aroused by an unanticipated and unprovoked battery inflicted by the

assailant without the fault of the person assailed. If in such case the death of the aggressor results, even if intentional, it cannot be traced to a malignant heart but is imputable to human frailty. Passion and malice are not convertible terms, so that an act prompted by the one cannot be said to proceed from the other." In *State* v. *Clifford*, 59 W. Va. 1, 52 S. E. 981, points 10 and 11 of the syllabus are stated in these words: "A sudden intentional killing with a deadly weapon, by one who is not in any way at fault, in immediate resentment of a gross provocation, is *prima facie* a killing in heat of blood, and, therefore, an offense of no higher degree than voluntary manslaughter." and "When in such case, the evidence discloses that no time intervened between the giving of the provocation and the act of killing, within which passion could have subsided and reason regained its dominion and the fatal act itself was not attended by circumstances of extreme cruelty and inhumanity, nor preceded by conduct from which malice can be inferred, a conviction of murder in the second degree should be set aside and a new trial allowed." The second affray, in which Weekley was the aggressor and which without his aggressiveness would not have happened, occurred suddenly and ended quickly with the fatal wound administered by the defendant. In the light of these undisputed facts shown by the evidence, sufficient time did not intervene between the commencement of the assault by Weekley and the act of the defendant in inflicting the wound which caused the death of his assailant to permit the passion of the defendant to subside or reason to regain dominion of his mind. Neither was the fatal act attended by circumstances of extreme cruelty or inhumanity nor was it preceded by conduct from which malice upon the part of the defendant could be inferred.

As malice is essential to support a finding of guilty of murder of the first or second degree the verdict which found the defendant guilty of murder of the first degree, being based on evidence which fails to establish malice, either express or implied, on the part of the defendant,

should have been set aside. When the verdict of a jury is wholly without evidence on a point essential to a finding, or the evidence is plainly insufficient to warrant such finding by the jury, such verdict should be set aside and a new trial should be awarded. *State* v. *Hurst*, 93 W. Va. 222, 116 S. E. 248; *Vintroux* v. *Simms*, 45 W. Va. 548, 31 S. E. 941. Without sufficient evidence of malice the verdict which found the defendant guilty of murder of the first degree can not stand. *State* v. *Ponce*, 124 W. Va. 126, 19 S. E. 2d 221.

In point 3 of the syllabus in *State* v. *Hurst*, 93 W. Va. 222, 116 S. E. 248, this Court said: "Where in a trial upon an indictment for murder there is no evidence showing malice, it is error to instruct the jury that it may find defendant guilty of murder either in the first or second degree." See also *State* v. *Cassim*, 112 W. Va. 92, 163 S. E. 769; *State* v. *Roush*, 95 W. Va. 132, 120 S. E. 304.

Instructions must be based upon the evidence, and an instruction which is not sustained by evidence should be refused. *Wilson* v. *Edwards*, 138 W. Va. 613, 77 S. E. 2d 164; *Thrasher* v. *Amere Gas Utilities Company*, 138 W. Va. 166, 75 S. E. 2d 376; *Thomason* v. *Mosrie*, 134 W. Va. 634, 60 S. E. 2d 699; *Chesapeake and Ohio Railway Company* v. *Johnson*, 134 W. Va. 619, 60 S. E. 2d 203; *Davis* v. *Pugh*, 133 W. Va. 569, 57 S. E. 2d 9; *State* v. *Humphreys*, 128 W. Va. 370, 36 S. E. 2d 469; *Neal* v. *City of Bluefield*, 105 W. Va. 201, 141 S. E. 779; *Morgan Lumber and Manufacturing Company* v. *Surber*, 104 W. Va. 308, 140 S. E. 12; *Roberts* v. *Lykins*, 102 W. Va. 409, 135 S. E. 388; *Wilson* v. *McCoy*, 93 W. Va. 667, 117 S. E. 473; *Williams* v. *County Court of Lincoln County*, 90 W. Va. 67, 110 S. E. 486; *Penix* v. *Grafton*, 86 W. Va. 278, 103 S. E. 106; *Bond* v. *National Fire Insurance Company*, 77 W. Va. 736, 88 S. E. 389. It is error to give instructions to the jury, even though they state correct propositions of law, when there is no evidence to support some of the hypotheses which they contain. *Penix* v. *Grafton*,

86 W. Va. 278, 103 S. E. 106. See also *Higgs* v. *Watkins,* 138 W. Va. 844, 78 S. E. 2d 230.

The instructions given over the objection of the defendant are not based upon the evidence and are not supported by evidence that the killing of Weekley by the defendant was deliberate and premeditated or constituted murder of the first degree or by evidence that the defendant, without any or upon slight provocation, inflicted the wound which caused Weekley's death. For these reasons the instructions should have been refused and the action of the circuit court in giving them constituted reversible error. Moreover, as the verdict is not supported by evidence of the essential element of malice the circuit court committed reversible error in refusing to sustain the motion of the defendant to set it aside and grant him a new trial. A verdict of a jury which is not supported by the evidence will be set aside on writ of error. *State* v. *Winkler,* 142 W. Va. 266, 95 S. E. 2d 57, decided at this term of this Court; *State* v. *Cassim,* 112 W. Va. 92, 163 S. E. 769; *State* v. *Ison,* 104 W. Va. 217, 139 S. E. 704; *State* v. *Hurst,* 93 W. Va. 222, 116 S. E. 248.

The judgment is reversed, the verdict is set aside, and a new trial is awarded the defendant.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*