OLIVER ADDAIR

*v.*

MOTORS INSURANCE CORPORATION

(No. 13263)

Decided July 23, 1974.

*E. D. Wells, Jr., Grover C. Goode* for appellant.

*Wade H. Ballard, II, Hostler, Logsdon, Shinaberry & McHugh, Sterl F. Shinaberry* for appellee.

CAPLAN, CHIEF JUSTICE:

This is an appeal from a final order of the Circuit Court of McDowell County in an action instituted by the plaintiff, Oliver Addair, against the defendant, Motors Insurance Corporation, sometimes herein referred to as M.I.C., for the recovery of damages alleged to have been caused by reason of the loss of use of a truck by the plaintiff in the business in which he was engaged. At the trial of this case the jury returned a verdict for the plaintiff in the sum of $8,315.00, upon which amount the court entered judgment. It is from this judgment that the defendant prosecutes this appeal.

The plaintiff owned a five-ton 1967 Chevrolet truck which he used in his business of hauling coal. On January 31, 1967 he purchased an insurance policy from M.I.C., under which his truck was insured against accidental loss or damage caused by collision with another object or by upset. On September 8, 1969 the plaintiff's truck was involved in an accident, causing damages which were covered by the insurance policy. The plaintiff notified M.I.C. of the damage and took the truck to Cole Motor Company, Inc. in Bluefield, West Virginia. He alleged that the truck was taken to that garage at the instance of defendant insurance company.

A few days thereafter an adjuster from M.I.C. made a preliminary inspection of the truck and determined that from the nature of the damage, a heavy-duty truck adjuster should handle the claim. Sometime later, apparently after a qualified adjuster had examined the damage, the plaintiff was contacted by an agent of M.I.C. and was told that, in his opinion, the truck could be repaired more quickly and at less expense at Ron's Ford Sales in Bristol, Virginia. As alleged in his complaint, "Plaintiff, relying on said assurances and representations, consented and permitted" to have his truck moved to Ron's garage. This move took place on September 24 or 25, 1969 and the repairs to the truck were not completed until February 28, 1970.

The defendant paid all of the costs for the repairs, the sole claim of the plaintiff being for damages incurred by the loss of use of the truck for the alleged unreasonable time it took for Ron's garage to repair the damage. It is the position of the plaintiff that, under the provisions of the policy whereby the "company may pay for the loss in money or may repair or replace the automobile", the defendant chose to make the repairs and in doing so violated its duty by taking an unreasonably long time in causing said repairs to be made.

According to the testimony of the plaintiff, a representative of Ron's Ford Sales told him that they could not proceed with the repairs until they received a work order from M.I.C. This work order was not received until October 25, 1969, but the reason for the delay was not made clear in the record. There was substantial evidence to the effect that the plaintiff had entertained the idea of foregoing the repair of his truck and purchasing a new one.

Basically, the plaintiff charges in his complaint that he took his damaged truck to Ron's Ford Sales at the instance of M.I.C., that it thereby became the duty of the defendant to have the truck repaired within a reasonable time; that it violated such duty; and, that by reason of such violation of duty, he suffered damages in the amount of $8,500.00.

In its answer Motor Insurance Corporation denies that it has violated any duty arising under its contract of insurance. It further says that if any unreasonable delay occurred in the repair of the plaintiff's vehicle causing the latter to suffer damages, such delay and damages were not the result, directly or indirectly, of any breach of contract or breach of duty to the plaintiff on the part of Motors Insurance Corporation.

Although numerous errors are assigned on this appeal the principal issues are whether the defendant breached any duty it owed the plaintiff under the insurance contract and whether the measure of damages upon which recovery was permitted was proper.

Under the terms and provisions of the insurance policy the defendant agreed to pay for any covered damage to the plaintiff's truck; this it did. It is asserted by the plaintiff that M.I.C. undertook to repair the truck and that it thereby became responsible for the unreasonable delay alluded to above. Except for the period of time from the accident to October 25, 1969, as hereinafter discussed, no proof is offered in support of the contention that the defendant caused the delay in repairs.

The evidence reflects that M.I.C., because of the nature of the truck and the damage thereto, suggested to the plaintiff that the repairs be made at Ron's Ford Sales rather than at Cole's garage. Admittedly it was the plaintiff's choice and he made the decision to have the truck repaired at Ron's garage. That he made this decision in reliance upon M.I.C.'s representation that the truck could be repaired sooner and less expensively at Ron's does not in and of itself create liability on the part of the defendant. There is no showing or even an attempt to show that M.I.C. was negligent in suggesting that the truck be repaired by Ron's garage; nor was it motivation in any manner questioned. Likewise there was no offer of evidence tending to show that Ron's Ford Sales did not. operate a competent truck repair service. There was, on the other hand, extensive evidence that the subject delay was occasioned by extreme difficulty in obtaining parts needed for the proper repair of the truck. There was also considerable evidence that further replacement and repairs were needed by reason of after discovered conditions caused by wear and tear damage entirely unrelated to the accident.

If indeed M.I.C. chose to repair the truck rather than pay for the loss in money as permitted under Condition No. 3 of the insurance policy it may have assumed a duty to make such repairs and to make them within a reasonable time. However, in order to hold the defendant guilty of a breach of that duty as charged it was incumbent upon the plaintiff to prove by proper evidence some act of the

defendant which constituted such breach. Here there was a bare allegation that M.I.C. "violated its duty and obligation to the plaintiff in having said truck taken to Bristol, Virginia". There is, with one exception, no allegation or proof that the delay was caused by the recommendation of M.I.C. that the truck be repaired in Bristol, Virginia. That exception relates to the plaintiff's allegation that Ron's Garage would not begin the repairs to the truck until it received a work order from M.I.C. and that M.I.C. failed and neglected to send such work order until October 25, 1969. The evidence on this allegation was in conflict so it was for the jury to determine whether such delay was caused by the defendant. This determination, however, should be made on proper instructions and any damages occasioned by the delay in delivering the work order should relate only to the period of time alluded to above, that is, from the time the truck was delivered to Ron's garage to October 25, 1969.

Relevant to the consideration of the defendant's liability is the assignment that error was committed in granting Instruction No. 2 offered by the plaintiff. That instruction reads:

"The Court instructs the jury that if you believe from a preponderance of the evidence that the plaintiff's 1967 Model Chevrolet Tandem Truck was insured against loss by collision by the defendant for damage do the truck in excess of $100.00 on September 8, 1969, and that on that date plaintiff's truck was damaged to the extent of several hundred dollars and that said damage over and above $100.00 was covered by the insurance policy, and that the defendant was notified September 9, 1969, of the accident which resulted in the damage to the truck, and that the plaintiff took the truck to Cole Motor Company at Bluefield, West Virginia, September 9, 1969, so an adjuster for the defendant could inspect the truck, and that defendant's adjuster then informed the plaintiff that said truck could be repaired quicker at Ron's Ford Sales at Bristol, Virginia, and said adjuster obtained the permission of the plaintiff and caused said truck to be taken to Rons Ford

Sales at Bristol, Virginia, to be repaired, but that Rons Ford Sales did not receive the authorization from the defendant to repair said truck until 10-24-69, and that said truck was not repaired, and plaintiff was not notified it had been repaired until February 28, 1970, and if you further believe from a preponderance of the evidence that said truck could and should have been repaired within 5 to 8 weeks after it was delivered to Rons Ford Sales, and that plaintiff was damaged as a direct and proximate result thereof, then your verdict should be for the plaintiff in such amount as you believe from a preponderance of the evidence he was damaged by reason of loss of use of the truck from the time it could have been and should have been repaired to February 28, 1970."

Defendant objected to the granting of this instruction and, in compliance with Rule 51, R.C.P., stated distinctly its grounds therefor. This instruction merely relates the events as envisioned by the plaintiff. It fails entirely to place before the jury a consideration of any wrongdoing by the defendant. It is a binding instruction but is incomplete in that it fails to charge the defendant with any duty or liability; nor does it permit the jury to consider the defendant's theory of the case.

In *Penix v. Grafton,* 86 W.Va. 278, 103 S.E. 106 (1920), it was stated that it "is error to give a binding instruction in favor of the plaintiff which does not require a finding by the jury upon a theory of defense which is presented and supported by evidence * * *." In the instant case there is evidence that the plaintiff acted in such a manner as to have delayed the defendant in making its decisions. This should have been reflected in the instruction. Therefore, the vice of this instruction is the failure to consider the defendant's theory of defense. As stated in *Penix, supra,* "An instruction which binds the jury to find for the plaintiff which ignores a substantial defense supported by evidence should not be given." In other words, in order to make a binding instruction proper it should include in it every hypothesis, as reflected by the evidence, which

would permit the jury to consider both theories of the case.

It has been generally held that binding instructions which ignore vital issues in a case should not be given and this is so even though such issues are presented by other instructions. See *Britton v. South Penn Oil Co.,* 73 W.Va. 792, 81 S.E. 525 (1914); *Shumaker v. Thomas,* 108 W.Va. 204, 151 S.E. 178 (1929) and 10 M.J., *Instructions,* Section 17.

Instruction No. 2 directs the jury to find for the plaintiff upon an incomplete statement of the case. It does not consider the defense theory; nor does it purport to show any manner in which the defendant committed any wrong-doing. It merely recites facts and instructs the jury that if it finds these facts to be true under the evidence that it should find for the plaintiff. This instruction is an erro-neous direction to the jury and constitutes reversible error.

It is further asserted by the defendant that the measure of damages under which recovery was permitted was improper and constitutes reversible error. Through the testimony of the plaintiff and Paul Hare, an accountant and a former partner of plaintiff's brother, for whom the plaintiff hauled coal, it was stated that there were 112 working days from the time of the accident in which plaintiff's truck was damaged and the day on which the repairs were finally completed. It was generally conceded by the plaintiff that the repair of the truck should have taken approximately 29 days from which he concluded that he lost 83 full days of work. He testified that he would haul six loads per day or four hundred ninety-eight loads during that eighty-three day period; that each load con-sisted of twenty to twenty-one tons of coal making a total of 9,960 tons of coal which he would have hauled during said period. He then concluded that at a $1.15 a ton he would have earned $11,454.00. Thereafter he made certain deductions for the driver, expenses for gas, oil and tires and arrived at an earning figure of $8,341.50. The jury returned a verdict of $8,315.00. Throughout this testimony

and that of Mr. Hare the defendant made timely objections and the question here is whether the court permitted testimony to be given to the jury which would reflect an improper measure of damages.

The plaintiff's evidence attempted to show as a basis for damages what his gross receipts would have been over the aforesaid period of 83 working days. By making deductions for certain expenses he arrived at the figure of $8,341.50 which represents the alleged loss of profits for which he here seeks recovery. In computing his claimed loss of profits the plaintiff assumed that he would work every minute of every working day and that he would experience no interruption of work either by reason of breakdown of his truck or any other reason. The expenses deducted by him did not include many normal business costs such as wear and tear, maintenance and repairs of the truck, insurance, taxes and other items, many of which were reflected on his income tax returns for the past two years which were filed and made a part of this record. These computations by which the plaintiff arrived at a gross profit figure are based on conjecture and speculation.

This Court said in *State ex rel. Shatzer v. Freeport Coal Company,* 144 W.Va. 178, 107 S.E.2d 503, (1959) "Loss of profits can not be based on estimates which amount to mere speculation and conjecture but must be proved with reasonable certainty." Demonstrating that this is a legal principle of long standing the Court in *Shatzer* quoted Syllabus No. 5 of *Douglass v. Ohio River Railroad Company,* 51 W.Va. 523, 41 S.E. 911 (1902), which reads as follows: "Mere speculative and conjectural estimates of profits which might have been made, or of the loss of gains and profits which might have been made, are not a legitimate basis upon which to fix damages." See *Mullins v. Baker,* 144 W.Va. 92, 107 S.E.2d 57 (1958); *State of West Virginia for the Use of Stout v. Rogers,* 132 W.Va. 548, 52 S.E.2d 678 (1949). The following language is found in 5 M.J., *Damages,* Section 38: "In accordance with the

general rule concerning speculative damages, mere speculative and conjectural estimates of profits which might have been made, or the loss of gains and profits which might have been made, are not a legitimate basis upon which to fix damages. Profits may only be recovered when they can be ascertained with reasonable certainty." See also *Lewis v. St. Paul Fire and Marine Insurance Company*, 155 W.Va. 178, 182 S.E.2d 44 (1971); *Winters v. Campbell*, 148 W.Va. 710, 137 S.E.2d 188 (1964); and *Payne v. Ace House Movers, Inc.*, 145 W.Va. 86, 112 S.E.2d 449 (1960).

The evidence presented on behalf of the plaintiff cogently demonstrate that an improper measure of damages was employed and that the damages reflected by the jury verdict were excessive. Although the plaintiff in computing his damages assumed that his truck would have hauled coal every minute of every available shift, his own witness, Paul Hare, testified unequivocally that for the three months prior to the wreck, the plaintiff worked only 80% of the available shifts. The plaintiff readily admitted that for the prior eight-month period he had established no work record as that for which he now contends.

From the evidence in the record of this case the verdict of the jury cannot stand. As stated in *Shatzer, supra,* "The verdict of a jury in favor of a plaintiff, based on testimony which does nothing more than furnish ground for conjecture or speculation, as to the proper verdict to be returned, can not be justified, and will be set aside by this Court." See also *McCabe v. The City of Parkersburg,* 138 W.Va. 830, 79 S.E.2d 87 (1953); *Cato v. Silling,* 137 W.Va. 694, 73 S.E.2d 731 (1952); *Oresta v. Romano Brothers, Inc.,* 137 W.Va. 633, 73 S.E.2d 622 (1952); and *Welty v. Baer,* 107 W.Va. 226, 148 S.E. 193 (1929).

The judgment of the Circuit Court of McDowell County is reversed, the verdict of the jury is set aside and the case is remanded to that court for a new trial.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*