427 S.E.2d 447

CELL, INC., a West Virginia
Corporation, Appellee,

v.

RANSON INVESTORS, a West Virginia
Limited Partnership; George W. Bush-
ey, Individually; and Vernon L. Tetlow,
Individually, Appellants.

CELL, INC., a West Virginia
Corporation, Appellant,

v.

RANSON INVESTORS, a West Virginia
Limited Partnership; George W. Bush-
ey, Individually; and Vernon L. Tetlow,
Individually, Appellees.

Nos. 20858, 20861.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 9, 1992.

Decided Dec. 9, 1992.

Donald M. Kresen, Jackson & Kelly,
New Martinsville, for appellant.

John C. Skinner, Jr., F. Samuel Byrer,
Nichols & Skinner, L.C., Charles Town, for
appellee.

NEELY, Justice:

Cell Incorporated, the plaintiff below and
appellee in this Court, entered into a com-
mercial lease with Ranson Investors, defen-
dant below and appellant in this Court, for
commercial space in Ranson, Jefferson
County, West Virginia. The premises to be
let by the appellant were to be used for a
grocery store; however, the shopping cen-
ter to which the lease related had not yet
been constructed. After the lease was en-
tered into, Ranson demanded increased
rents from Cell on the grounds that they
were unable to obtain financing for the
shopping center under the terms of the
lease as written. Ranson never gave Cell
possession of the premises.

Unbeknownst to Cell, Ranson negotiated with a third party, Roger Barnhart, to lease the grocery store space in the proposed shopping center. Nonetheless, notwithstanding Ranson's willingness to double deal, Ranson never built a shopping center in the location contemplated by their lease with Cell, and the entire scheme fell through with Ranson barely getting out with a whole skin. (In other words, we have before us a typical real estate development dream where everyone thinks big thoughts *except* the institutions who are to do the financing.) A shopping center was ultimately constructed on the property Ranson had bought for the purpose but later sold and Barnhart's grocery opened in the exact location that Ranson had promised to Cell, Incorporated [1].

Cell filed suit in 1986 against Ranson alleging damages for lost profits during the entire twenty year lease term because Ranson breached their contract. The case was tried in the Circuit Court of Jefferson County in March, 1991 and Cell presented evidence of lost profits only for the initial ten years of the lease (1984–1994). Ranson objected to introduction of the lost profit evidence but made no effort to rebut the testimony of Cell's witnesses.

At the close of Cell's case, Ranson moved for a directed verdict. The circuit court denied the motion for a directed verdict, but the court limited the jury's consideration of the lost profits claim to the period from 1 July 1984 through 1991, even though the court had permitted Cell to present evidence of lost profits through 1994. In response to the judge's ruling, Cell limited its closing argument to the computation of lost profits for the initial seven years of the lease.

1. In 1983, George W. Bushey and Vernon L. Tetlow, operating as Ranson Investors, began dealing with a man named C.J. Curry, concerning a parcel of land in Ranson. Mr. Bushey and Mr. Tetlow planned to develop the property into a shopping center, but they had no experience in commercial developments of the type under consideration. Mr. Curry represented himself to be an experienced broker, licensed in Virginia and West Virginia, and Mr. Curry indicated that he had been involved in major developments in northern Virginia, including Tysons Corner.

Cell's experts' opinions concerning lost profits were based upon market data, the consumer price index for retail food, and the actual operating results of Barnhart's grocery. Barnhart's was the tenant that took roughly the same location that Ranson had promised to Cell under the lease agreement. Mr. Barnhart testified about the desirability and profitability of his grocery's location, and Mr. Barnhart testified that there were no other grocery stores in the area during the period at issue in the lawsuit. Indeed, Mr. Barnhart testified that net profits in his store ran anywhere from $100,000 to $325,000 per year.

The expert witnesses linked Mr. Barnhart's actual operating data to the market surveys and consumer price index in arriving at their opinions. After a four day trial, the jury returned a general verdict in favor of Cell for $510,017, which was substantially the experts' calculation of lost profits for the years 1984 through 1991 reduced to their "present value" as of 1984. We reverse.

■ "Loss of profits can not be based on estimates which amount to mere speculation and conjecture but must be proved with reasonable certainty." Syl. pt. 5, *State ex rel. Shatzer v. Freeport Coal Company*, 144 W.Va. 178, 107 S.E.2d 503 (1959); Syl. pt. 5, *Addair v. Motors Insurance Corp.*, 157 W.Va. 1013, 207 S.E.2d 163 (1974); Syl. pt. 11, *Smithson v. USF & G*, 186 W.Va. 195, 411 S.E.2d 850 (1991). In *Shatzer*, this Court described the type of proof that must be shown before a recovery for lost profits may be granted:

The proof must not consist of mere conjecture, speculation, or opinion not found-

At the same time, Mr. Curry had a consulting agreement with Paul and James Wilson, who later formed Cell, Inc. Mr. Curry was instrumental in negotiating the lease in question which provided for a grocery store to be opened by Cell that would contain 9,216 square feet.

The detailed facts of what happened thereafter are unimportant to the decision of the case, but as we indicated earlier Ranson Investors were unable to secure financing for their proposed shopping center, the deal went sour for everyone concerned, and Ranson Investors made no money from the entire project.

ed on facts, but must consist of actual facts from which a reasonably accurate conclusion regarding the cause and the amount of the loss can be logically and rationally drawn.

*Shatzer,* 144 W.Va. at 185, 107 S.E.2d at 508. However, in *Shatzer* this Court went on to note:

Prospective profits of a new business or enterprise are generally regarded as too remote, contingent and speculative to satisfy the requisite standard of reasonable certainty in determining the elements of recoverable damages in an action for breach of contract or for a tort.

*Shatzer,* 144 W.Va. at 186, 107 S.E.2d at 508.

■ Since the time of *Shatzer,* however, the nationwide trend has been away from a *per se* rule against the award of lost profits to new businesses and towards a rule that requires a strong evidentiary basis for proving lost profits of a new business before a court will grant them:

It is impossible for anyone, including an appellate court, to foresee all the possible situations in which meritorious claims could be asserted for lost profits even though the business to which those profits might accrue had not yet commenced operation. Nor is any worthwhile end to be achieved by permitting one party to breach his contracts with impunity—giving him an option, as it were—because the other party has not yet commenced operations. The trend of the modern cases is plainly toward replacing the old rule of law with a rule of evidence—the unquestionable principle that damages for loss of profits must be proven with reasonable certainty and that the evidence must support that finding by trier of fact.

Dunn, *Recovery of Damages for Lost Profits 3d* 228 (1987). Although the courts of most other jurisdictions share our concern for the risk of allowing speculative loss of profit awards for new businesses, virtually all believe that those concerns can be addressed by requiring a high level of proof:

While we agree ... that lost future profits are difficult for a new business to

calculate and prove, we are persuaded that there should be no *per se* rule against the award of such damages where they may be shown with the requisite degree of certainty.

*Olivetti Corp. v. Ames Business Systems,* 319 N.C. 534, 546, 356 S.E.2d 578, 585 (1987). *Accord, AGF, Inc. v. Great Lakes Heat Treating Company,* 51 Ohio St.3d 177, 555 N.E.2d 634 (1990); *W.W. Gay Mechanical Contractor, Inc. v. Wharfside Two, Ltd.,* 545 So.2d 1348 (Fla.1989); *Drews Co. v. Ledwith–Wolfe Associates,* 296 S.C. 207, 371 S.E.2d 532 (1988); *Super Valu Stores, Inc. v. Peterson,* 506 So.2d 317 (Ala.1987); *Short v. Riley* 150 Ariz. 583, 724 P.2d 1252 (1986); *Harsha v. State Savings Bank,* 346 N.W.2d 791 (Iowa 1984); *Chung v. Kaonohi Center Co.,* 62 Hawaii 594, 618 P.2d 283 (1980); *Fera v. Village Plaza, Inc.,* 396 Mich. 639, 242 N.W.2d 372 (1976).

The *Restatement (Second) of Contracts* § 352 cmt. b (1981) states:

The difficulty of proving lost profits varies greatly with the nature of the transaction. If, for example, it is the seller who claims lost profit on the ground that the buyer's breach has caused him to lose a sale, proof of lost profit will ordinarily not be difficult. If, however, it is the buyer who claims lost profit on the ground that the seller's breach caused him loss in other transactions, the task of proof is harder. Furthermore, if the transaction is more complex and extends into the future, as where the seller agrees to furnish all of the buyer's requirements over a period of years, proof of the loss of profits caused by the seller's breach is more difficult. If the breach prevents the injured party from carrying on a well-established business, the resulting loss of profits can often be proved with sufficient certainty. Evidence of past performance will form the basis for a reasonable prediction as to the future. See Illustration 5. *However, if the business is a new one or if it is a speculative one that is subject to great fluctuations in volume, costs or prices, proof will be more difficult. Neverthe-*

**16**

*less, damages may be established with reasonable certainty with the aid of expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, and the like.* [Emphasis added].

Today, we expressly adopt the rule of the clear majority of jurisdictions and the *Restatement* that a new business may recover lost profits in a breach of contract action, but only if the plaintiff establishes the lost profits with reasonable certainty; lost profits may not be granted if they are too remote or speculative.

The question before us today, then, is whether the evidence of lost profits submitted by Cell upon which the jury based its judgment was too speculative to support a jury award. We find that it was.

The market analysis provided to Mr. Paul Wilson and Mr. James Wilson who owned Cell, Inc. dated 7 March 1985, by Rich Foods, a grocery wholesaler, established that a store must contain no less than 12,000 square feet to be competitive. Roger Barnhart, who ultimately opened a much larger grocery store constructed by parties unrelated to this law suit, on the land where Ranson was to build their shop-. ping center, testified to substantial actual profits, but his store contained approximately 17,276 square feet. Based upon Mr. Barnhart's testimony concerning his current sales, Cell's economist attempted to apply Barnhart's operating results to the charts and tables in the *Operating Results of Independent Supermarkets* for 1989. The statistics used were for conventional supermarkets in the mid south region of less than 10,000 square feet. However, there were only eleven stores in that category out of 19,000 member stores!

Unlike Mr. Barnhart, who already owned several grocery stores before he took over the location in Ranson, Paul and James Wilson did not have experience running a grocery store; the proposed size of the Wilson (Cell's) store was roughly 8,000 square feet smaller than the successful Barnhart store; and, there was evidence that a store of less than 12,000 square feet would not be profitable. Accordingly, the

damages evidence was too speculative to sustain a jury award.

Having decided that the judgment cannot stand, it is unnecessary to address Cell's cross-appeal alleging error in the trial court's failure to award pre-judgment interest.

Accordingly, for the reasons set forth above, the judgment of the Circuit Court of Jefferson County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.