484 S.E.2d 647

**Jeffrey GIVEN, D.C., Plaintiff Below, Appellee,**

v.

**Marshall FIELD, Sr., Defendant Below, Appellant.**

**No. 23409.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 28, 1997.

Decided March 21, 1997.

Edward M. Kowal, Jr. and Laura L. Gray, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, for Appellant.

William L. Mundy and Nora Clevenger Price, Mundy & Adkins, Huntington, for Appellee.

PER CURIAM:

This is an appeal by Marshall Field, Sr., the defendant below, from an order of the Circuit Court of Cabell County awarding Jeffrey Given, D.C., the plaintiff below, default judgment on Mr. Given's right to recover in an action for profits due under a contract. On appeal, Marshall Field, Sr. contends that the trial court erred in entering the default judgment, and he also claims that the trial court committed a number of errors in conducting a jury trial on the amount of damages to which Jeffrey Given, D.C. was entitled. After reviewing the issues presented and the record filed, this Court cannot conclude that the circuit court committed reversible error. The judgment of the Circuit Court of Cabell County is, therefore, affirmed.

In 1988, Jeffrey Given, a chiropractor from Hurricane, West Virginia, invented a device called a "back saver," which was designed to be worn over clothing and which was designed to prevent back injury to people who were bending and lifting objects.

In June 1989 Mr. Given entered into a written licensing agreement or contract with "Boyce Ann Bryant, D.B.A., Bryant Orthopedics, Inc." of Milton, West Virginia. Under the agreement, Jeffrey B. Given granted Bryant Orthopedics, Inc. an indefinite license to manufacture his "back saver." In exchange for the license, Bryant Orthopedics, Inc. agreed to pay Jeffrey Given $1.00 "royalty" for each "back saver" sold. Marshall Field, Sr., the appellant in the present proceeding, was an investor in Bryant Orthopedics, Inc. and owned a substantial amount of common stock and preferred stock in the corporation. Marshall Field, Sr., was also an owner of Emjay Enterprises, Inc., a South Carolina corporation, which in 1989 and 1990 was the manufacturer's representative for Bryant Orthopedics, Inc.

Following execution of the licensing agreement Bryant Orthopedics, Inc., with the apparent assistance of Marshall Field, Sr., undertook to manufacture and market Jeffrey Given's "back saver." Although it apparently sold a large number of the devices, Bryant Orthopedics, Inc., did not pay Jeffrey Given the $1.00 per unit royalty required by the 1989 contract.

Because of the failure of Bryant Orthopedics, Inc., to pay the required royalties, Jeffrey Given filed suit against Bryant Orthopedics, Inc., against Boyce Ann Bryant, and against Marshall Field, Sr. in April 1992. In addition to asserting breach of contract, Jeffrey Given, in an amended complaint, alleged fraud, and he prayed for the circuit court to pierce the corporate veil of Bryant Orthopedics, Inc., and to hold Boyce Ann Bryant and Marshall Fields, Sr. personally liable.

After institution of the action, the attorney for Jeffrey Given filed a number of discovery requests. The defendants, including the appellant, Marshall Fields, Sr., resisted certain of those discovery requests, but the circuit court found that the discovery was proper and ordered the defendants to comply and respond. The defendants, however, refused to respond, and over approximately a two-year period the circuit court entered eleven orders directing the defendants, including

Marshall Field, Sr., to produce various documents and to pay attorney's fees connected with the production proceedings. The court also imposed upon the defendants certain of the lesser sanctions authorized under Rule 37 of the West Virginia Rules of Civil Procedure where a party to a civil action fails or refuses to respond to a discovery order.

At length, on February 14, 1995, because the defendants had not complied with any of the prior orders, counsel for Jeffrey Given moved for default judgment. A hearing was scheduled on this motion for March 31, 1995, and was rescheduled on several occasions at the defendants' request. Finally, the matter was reset for August 4, 1995.

At the August 4, 1995, hearing the circuit court reviewed the record of the defendants' noncompliance with the discovery orders, and, at the conclusion of the hearing, the trial court granted default judgment on the issue of the defendants' liability and ruled that the question of damages would be set for trial. In granting the default judgment, the trial judge stated:

> I have been a circuit judge for 10–1/2 years. In that time I have had any number of difficulties in cases of litigation. I have never in all that time ever seen a case where there was more egregious violation of the spirit and letter of the discovery rules in court orders than there has been in this case, more willful violations, more failures to abide by court orders than there have been in this case. And I have tried sanctions that are less harsh than the ultimate sanctions. I have ordered money sanctions. Those have been ignored. All the previous sanctions have simply failed to produce the result that the rules of discovery and the rules of pre-trial litigation contemplate. I gave fair warning in the last order and it certainly was not complied with. And I will grant your motion for default at this point in time and set this matter down for inquiry on damages.

The appellant's first claim in the present appeal is that the circuit court erred in granting Jeffrey Given, D.C., default judgment.

Rule 37 of the West Virginia Rules of Civil Procedure authorizes a trial court in a civil action to impose various sanctions when a party refuses to comply with an appropriate discovery order. Among the sanctions authorized is "[a]n order ... rendering a judgment by default against the disobedient party ..." Rule 37(b)(2)(C), West Virginia Rules of Civil Procedure.

▪ In *Bell v. Inland Mutual Insurance Company,* 175 W.Va. 165, 332 S.E.2d 127 (1985), this court held that the imposition of sanctions under Rule 37 of the West Virginia Rules of Civil Procedure is matter within the sound discretion of the trial court. Specifically, the court stated in syllabus point 1.

> The imposition of sanctions by a circuit court under *W.Va. R. Civ. P.*37 (b) for the failure of a party to obey the court's order to provide or permit discovery is within the sound discretion of the court and will not be disturbed upon appeal unless there has been an abuse of that discretion.

Further, in syllabus point 4 the Court recognized that where counsel for a party intentionally or with gross negligence fails to obey an order of the circuit court to provide or permit discovery, full range of sanctions permissible under Rule 37 in the W.Va. Rules of Civil Procedure is available to the court.

▪ In examining the record in the present case, it is clear that the attorney for the defendants, including the defendant, Marshall Field, Sr., intentionally or with gross negligence failed to obey the trial court's orders requiring discovery, not once, but on many occasions, and over a very lengthy time. It is also clear that the trial court attempted to impose lessor sanctions before entering default judgment.

A review of the record suggests to this Court that the trial court was absolutely correct in finding that the defendant's conduct in failing to respond to the court's discovery orders was egregious, and in view of the overall circumstances, the Court does not believe that the trial court abused its discretion in granting the default judgment or that the appellant, or Marshall Field's assertion on this point is meritorious.

In addition to claiming that the trial court erred in granting default judgment, the ap-

pellant claims that numerous errors were made with respect to the trial court's conduct of the jury trial on the amount of damages to which Jeffrey Given was entitled, and upon the ultimate judgment rendered on the jury's verdict. Specifically, the appellant contends that the evidence offered during trial did not support its award of $5,500,000.00 in compensatory damages to Jeffrey Given and that the trial court erred in failing to vacate the jury's $5,500,000.00 punitive damage award.

The jury trial on the amount of damages was conducted on September 28, 1995, and although certain of the defendants did appear, the appellant, Marshall Field, Sr., was not among them.

■ In *Cell, Inc. v. Ranson Investors*, 189 W.Va. 13, 427 S.E.2d 447 (1992), this Court recognized that businesses such as the one founded by Jeffrey Given in the present proceeding may recover lost profits in a breach of contract action. Specifically, we said in syllabus point 2: "A new business may recover lost profits in a breach of contract action, but only if the plaintiff establishes the lost profits with reasonable certainty; lost profits may not be granted if they are too remote or speculative." In reaching this conclusion the Court also attempted to provide some guidance as to what evidence would support lost profits. In so doing the Court examined with approval and adopted the rule set forth in the *Restatement (Second) of Contracts* § 352 cmt. b. (1981), which states in part: "[D]amages may be established with reasonable certainty with the aid of expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, and the like."

■ In the present case, although Jeffrey Given, at trial, was unable to produce exact evidence as to the number of back savers sold by Bryant Orthopedics, Inc., principally due to the failure of the defendants to comply with discovery requests, he did introduce substantial evidence of the precise type which the *Restatement of Contracts* and this Court in the *Cell* case indicated could form a reasonably certain basis for the assessment of damages for lost profits. For instance, he introduced evidence of a scientific market study completed in November, 1994, which

indicated that if Jeffrey Given's "back saver" had been marketed and sold in a reasonable and prudent manner it would have captured approximately fifteen percent of $150,000,000.00 spent on back savers in annual sales. He introduced financial data from a seller of his device showing that for the brief period January 1991 through June 1991 that seller, Safety Products, Inc., had purchased $125,749.83 of his "back savers" from the defendant, Bryant Orthopedics, Inc. The testimony of a certified public accountant, showed that using the most conservative numbers available, the value of the contract of Jeffrey Given from the date of inception to the trial date was $3,109,139.00, and that by extending the value of the contract to the year 2000, and discounting for present value the contract would have been worth an additional $2,000,000.00.

After reviewing this evidence, and other evidence offered at trial, this Court believes that it was adequate under the principles set forth in *Cell, Inc. v. Ranson, supra,* and our other law relating to compensatory damages to support the jury's compensatory damage award in this case.

■ In addition to the compensable damages the jury found that Jeffrey Given was entitled to $5,500,000.00 in punitive damages. On appeal the appellant claims that this award was inappropriate under the factors set forth in *Garnes v. Fleming Landfill, Inc.,* 186 W.Va. 656, 413 S.E.2d 897 (1991), and that this Court should set it aside.

■ In syllabus point 3 of *Garnes v. Fleming Landfill, Inc., Id.,* this Court stated:

When the trial court instructs the jury on punitive damages, the court should, at a minimum, carefully explain the factors to be considered in awarding punitive damages. These factors are as follows:

(1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the defendant's actions caused or would likely cause in a similar situation only slight harm, the damages

should be relatively small. If the harm is grievous, the damages should be greater.

(2) The jury may consider (although the court need not specifically instruct on each element if doing so would be unfairly prejudicial to the defendant), the reprehensibility of the defendant's conduct. The jury should take into account how long the defendant continued in his actions, whether he was aware his actions were causing or were likely to cause harm, whether he attempted to conceal or cover up his actions or the harm caused by them, whether/how often the defendant engaged in similar conduct in the past, and whether the defendant made reasonable efforts to make amends by offering a fair and prompt settlement for the actual harm caused once his liability became clear to him.

(3) If the defendant profited from his wrongful conduct, the punitive damages should remove the profit and should be in excess of the profit, so that the award discourages future bad acts by the defendant.

(4) As a matter of fundamental fairness, punitive damages should bear a reasonable relationship to compensatory damages.

(5) The financial position of the defendant is relevant.

In examining this case this Court believes that the jury could have properly concluded that the defendants set out to deprive Jeffrey Given of his invention. They never paid him anything under their contract with him, and there is evidence that they even attempted to patent the device for themselves. It is also clear from the evidence adduced that the device was tremendously valuable. The harm to Jeffrey Given was consequently great.

The defendants' conduct was also reprehensible. Not only did they not pay Jeffrey Given, but there is evidence that they continually attempted to conceal their conduct, even at the trial stage, by repeatedly refusing to permit discovery.[1] It further appears that the defendants profited on a large scale from their actions and, that as a result they substantially enhanced their financial positions. Lastly, the Court cannot conclude that the jury's punitive award bears an unreasonable relationship to the compensable damages.

In short, the Court cannot conclude that the punitive damages award was improper under the factors set forth in *Garnes v. Fleming Landfill, Inc., Id.*

Lastly, the Court notes that the appellant claims that the trial court erred in instructing the jury during the damage trial and that the court allowed Jeffrey Given's attorney to make prejudicial remarks during closing argument.

In this Court's view these points were not adequately preserved during trial. Accordingly, the Court declines to address them.

Having concluded that there was no reversible error in this case, this Court believes that the judgment of the Circuit Court of Cabell County must be affirmed.

The judgment of the Circuit Court of Cabell Court is, therefore, affirmed.

Affirmed.

---

1. The attorney who is representing the appellant on appeal did not represent the appellant below and apparently was not responsible for the conduct which the Court notes here.