# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Bobby Beasley,**
**Plaintiff Below, Petitioner**

**FILED**

June 13, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 13-0978** (Kanawha County 07-C-2222)

**Mayflower Vehicle Systems, Inc.;**
**Roadlease Vehicle Systems, Inc.;**
**and Jana Dawson,**
**Defendants Below, Respondents**


## MEMORANDUM DECISION

Petitioner and plaintiff below, Bobby Beasley, by counsel Christopher J. Heavens, appeals the August 21, 2013, order of the Circuit Court of Kanawha County, granting summary judgment in favor of respondents and defendants below, Mayflower Vehicle Systems, Inc., Roadlease Vehicle Systems, Inc., and Jana Dawson. Respondents, by counsel Brian J. Moore and Michael J. Moore, filed a response to which petitioner replied.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2004, petitioner filed a lawsuit in federal court against Respondent Mayflower alleging that he was wrongfully terminated in retaliation for filing workers' compensation and deliberate intent claims against it. According to the record before us, Respondent Mayflower claimed that petitioner's termination was precipitated by petitioner's repeated tardiness, absences from work, and the fact that he was under the influence of alcohol while on the job.[1] During the course of the wrongful termination trial, Respondent Mayflower argued, in relevant part, that as a salaried employee, petitioner was not subject to the corporation's drug and alcohol testing or progressive discipline policies—which would have required written reprimands before termination for any alleged misconduct—and that those policies applied only to hourly workers. However, the employee handbook did not differentiate between hourly and salaried employees in terms of who

---

[1] It is unclear whether, at trial, Respondent Mayflower contended that petitioner was under the influence of alcohol at work on more than one occasion or whether there were additional reasons for his termination.

1

was subject to the policies contained therein.[2] For his part, petitioner argued that, in fact, these policies applied to him despite his status as a salaried employee. Ultimately, the jury returned a verdict in petitioner's favor, awarding him $165,000.00 in damages.[3]

At some point after the verdict, petitioner's counsel in the wrongful termination trial obtained an April 9, 2003, memorandum apparently written by Respondent Mayflower's general manager that stated, in relevant part, as follows:

> The issue that took place with Bobby Beasley in my absence on 4/5/2003 was not dealt with correctly. I understand your frustration about Bobby's performance over the past 6 weeks, and that the main reason why you dealt with this situation the way you did. . . . As your Manager I feel I must point out that in the future should you find yourself in a similar situation you must send any associate whether hourly or salary out for a drug and alcohol test.[4]

(Footnote added.)

On October 17, 2007, petitioner filed the present lawsuit alleging fraud, civil conspiracy, negligent and/or intentional spoliation of evidence, and intentional infliction of emotional distress.[5] In his complaint, petitioner alleged that the aforementioned memorandum was

---

[2] Although petitioner cross-examined Respondent Dawson, a corporate representative, on the issue, the trial court excluded the employee handbook from being admitted into evidence apparently based upon Dawson's testimony that the handbook did not apply to petitioner because he was a salaried employee.

[3] In the complaint, petitioner alleged that, inter alia, after the parties settled petitioner's deliberate intent claim, Respondent Mayflower offered him an at-will supervisory position that was not subject to the collective bargaining agreement and that Respondent Mayflower knew or should have known that he accepted the position in good faith and under the belief that he could only be terminated for good cause. Petitioner further alleged that, in fact, he was offered the position so that Respondent Mayflower could terminate him outside of the protection of the collective bargaining agreement for pretextual reasons; that petitioner's employment was terminated; and that Respondent Mayflower's conduct was intended, in part, as retaliation against petitioner for filing workers' compensation and deliberate intent claims against Respondent Mayflower.

[4] Petitioner states that he gained possession of this memorandum when it was inadvertently sent to his counsel during the discovery process of another (unrelated) case against Respondent Mayflower involving one of petitioner's co-workers.

[5] Respondent Roadlease Vehicle Systems, Inc. was identified in the complaint as "the successor and/or corporate parent of . . . Mayflower, and is legally responsible for all legally compensable damages owed by the defendants to the plaintiff." Respondent Jana Dawson was identified as a "corporate representative" who "committed the wrongful and illegal acts alleged" in the complaint.

purposely and illegally withheld by respondents during discovery in the underlying case in order to conceal their illegal motive for terminating his employment. He further alleged that the memorandum contained evidence that one of respondents' primary defenses—that their policies on drug and alcohol testing and progressive discipline did not apply to petitioner—was falsely asserted and damaged his right "to have the Court and jury consider all evidence when assessing [his] damages."

Respondents answered the complaint and discovery progressed. On or about March 22, 2011, respondents jointly filed a motion for summary judgment.[6] By order entered August 21, 2013, the circuit court granted the summary judgment motion. This appeal followed.

This Court has stated that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Furthermore, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N.Y.,* 148 W.Va. 160, 133 S.E.2d 770 (1963). Given the facts of the present case, the Court is mindful that there must be "specific facts demonstrating that, indeed, there is a 'trial-worthy' issue. . . . which requires not only a 'genuine' issue but also . . . a material fact." *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 60, 459 S.E.2d 329, 337 (1995) (footnote omitted).

On appeal, petitioner argues that the circuit court erred in granting summary judgment in favor of respondents and that his claims of fraud, civil conspiracy, and intentional infliction of emotional distress should have been permitted to proceed to trial.

### Fraud

Petitioner's complaint specifically alleged that, by withholding the aforementioned memorandum from petitioner, respondents committed fraud and perjury by falsely asserting during the underlying trial that salaried employees such as petitioner were not subject to drug and alcohol testing or progressive discipline. Petitioner argues that the circuit court erroneously concluded that his claim for fraud was based upon his assertion that respondents committed perjury at the trial of the underlying action and that petitioner's claim must fail because West Virginia does not recognize a civil cause of action for perjury. Petitioner argues that his fraud claim was not based upon respondents' perjury in the underlying trial, but was based upon respondents' failure to disclose the memorandum discussed above.

---

[6] Also named as defendants in the present action were Mayflower Vehicle Systems, LLC ("MVS"); Union Stamping & Assembly, Inc.; Union Partners, LLC; Michael Fell; and John Haughian. These defendants are not parties to the summary judgment order that is the subject of the instant appeal. MVS filed its own motion for summary judgment in 2009 and also filed a brief in the present appeal in support of the circuit court's summary judgment order. According to MVS's brief, its summary judgment motion has not been ruled upon. With regard to the remaining defendants set forth above, it is unclear as to whether they are still parties to the present action.

This Court has held that

> "'[t]he essential elements in an action for fraud are: '(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it.' *Horton v. Tyree*, 104 W.Va. 238, 242, 139 S.E. 737 (1927)." Syl. Pt. 1, *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981).

Syl. Pt. 5, *Kidd v. Mull*, 215 W.Va. 151, 595 S.E.2d 308 (2004). Upon de novo review, we conclude that petitioner's claim fails to satisfy all of the required elements of fraud. More specifically, despite his argument to the contrary, petitioner failed to demonstrate that he relied upon respondents' representation that salaried employees such as petitioner were not subject to the corporation's alcohol and drug testing and progressive discipline policies. According to the record before us, petitioner cross-examined corporate representative and respondent herein, Jana Dawson, on the issue, particularly with regard to the fact that the employee handbook itself does not indicate that it applies only to hourly employees. Simply put, petitioner strongly disagreed with respondents' position that, as a salaried employee, petitioner was not subject to certain personnel policies and tried his case accordingly. Thus, we find that petitioner failed to demonstrate that he relied on respondents' misrepresentation in this regard. Furthermore, petitioner received a favorable jury verdict in the underlying trial (i.e., $160,000.00 in damages). Although petitioner contends that he was prepared to present expert testimony that respondents' failure to disclose the subject memorandum "impact[ed] the evaluation of the case in terms of settlement and verdict value," this Court has stated that "'[j]uries will not be permitted to base their findings upon conjecture or speculation.' Point 4, Syllabus, *State ex rel. Shatzer v. Freeport Coal Company*, 144 W.Va. 178 (107 S.E.2d 503)." Syl. Pt. 4, *Addair v. Motors Ins. Corp.*, 157 W.Va. 1013, 207 S.E.2d 163 (1974). We conclude, therefore, that summary judgment was properly granted on petitioner's claim of fraud.

### Civil Conspiracy

Petitioner also argues that the circuit court erred in granting summary judgment in favor of respondents on his claim of civil conspiracy. "A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." Syl. Pt. 8, *Dunn v. Rockwell*, 225 W.Va. 43, 689 S.E.2d 255 (2009).

Petitioner's complaint alleged that the civil conspiracy claim arose from respondents' "fraud in withholding evidence and then falsely representing to the Court, jury and [petitioner] that [petitioner], as a salaried employee, was not entitled to the due process and procedural protections set forth in the employee handbook of [respondents]." More specifically, petitioner alleged that respondents' "corporate representative," Respondent Dawson, falsely testified that petitioner was not subject to the corporation's progressive discipline policy that required written reprimands before termination, and that all of the respondents herein conspired to withhold the subject memorandum from petitioner. This Court has stated that "[i]t is axiomatic that a corporation acts only through its officers, agents, and employees and that a corporation cannot

conspire with its own employees." *Princeton Ins. Agency, Inc. v. Erie Ins. Co.*, 225 W.Va. 178, 187, 690 S.E.2d 587, 596 (2009). *See Gray v. Marshall Cnty. Bd. of Educ.*, 179 W.Va. 282, 288, 367 S.E.2d 751, 756 (1988) ("Traditionally, a corporation cannot conspire with its employees."). Petitioner identified Respondent Dawson as a "corporate representative" in his complaint, and she apparently testified in that capacity during the underlying trial. However, petitioner now contends that Respondent Dawson *may* not have been employed by the respondent corporation at the time of trial and, in such an event, petitioner's claim for civil conspiracy in the present case should have been permitted to proceed to trial. As we have previously stated, "It is black letter law that '[s]tatements made by lawyers do not constitute evidence in a case.' *West Virginia Fire & Cas. Co. v. Mathews,* 209 W.Va. 107, 112 n. 5, 543 S.E.2d 664, 669 n. 5 (2000)." *Barbina v. Curry*, 221 W.Va. 41, 48, 650 S.E.2d 140, 147 (2007). Furthermore, "self-serving assertions without factual support in the record will not defeat a motion for summary judgment." *Williams,* 194 W.Va. at 61 n.14, 459 S.E.2d at 338 n.14. Petitioner had at least six years from the filing of the present complaint to determine whether Respondent Dawson was, in fact, employed by Respondent Mayflower at the time of the underlying trial. He failed to develop the facts in this regard. Accordingly, we conclude that the circuit court did not err in granting summary judgment in favor of respondents on petitioner's civil conspiracy claim.

### Intentional Infliction of Emotional Distress

Petitioner next argues that he established a prima facie case of intentional infliction of emotional distress and that the circuit court erred in granting summary judgment in favor of respondents on this issue. Intentional infliction of emotional distress, also known as the tort of outrage, requires proof of the following four elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, in part, *Travis v. Alcon Labs., Inc.,* 202 W.Va. 369, 504 S.E.2d 419 (1998). Furthermore,

> the role of the trial court is to first determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress. Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination."

*Id.* at syl. pt. 4, in part. An intentional infliction claim "is a difficult fact pattern to prove[,]" *Hines v. Hills Dep't. Store, Inc.*, 193 W.Va. 91, 96, 454 S.E.2d 385, 390 (1994).

On appeal, petitioner argues simply that it is "reasonable to conclude that a jury may find it outrageous for a party to a lawsuit to illegally withhold discoverable and admissible evidence"

5

and that respondents' misconduct (i.e., withholding the subject memorandum) satisfies the "burden . . . to establish a prima facie case of intentional infliction of emotional distress, especially in an employment termination lawsuit where the plaintiff's livelihood and reputation are at stake." Notwithstanding his argument to the contrary, petitioner fails to point to even a scintilla of evidence tending to show respondents' conduct to be "extreme and outrageous" or to otherwise satisfy the elements of an intentional infliction claim as set forth in *Travis*, above. *See Williams,*194 W.Va. at 60, 459 S.E.2d at 337 (stating that "the party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor. *Anderson [v. Liberty Lobby, Inc.],* 477 U.S. [242] at 252, 106 S.Ct. [2505] at 2512, 91 L.E.2d [202] at 214 [1986]."). We, therefore, conclude that the circuit court did not err in granting summary judgment in favor of respondents on petitioner's intentional infliction of emotional distress claim.[7]

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 13, 2014

**CONCURRED IN BY:**

Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Chief Justice Robin Jean Davis

---

[7] In his complaint, petitioner also alleged claims of negligent and intentional spoliation of evidence. We note that the circuit court addressed the merits of the spoliation claims in its summary judgment order and resolved them in favor of respondents. However, the circuit court also concluded that petitioner "conceded" these claims because he failed to address or otherwise respond to them before the circuit court. On appeal, although petitioner argues that the circuit court erred in granting summary judgment on the spoliation issues, we conclude that petitioner waived this argument on appeal by failing to address the spoliation claims before the circuit court: "To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect." Syl. Pt. 2, *State ex rel. Cooper v. Caperton,* 196 W.Va. 208, 470 S.E.2d 162 (1996). As previously noted, as the party opposing summary judgment, petitioner was required to offer "more than a mere 'scintilla of evidence'" on these claims and "to produce evidence sufficient for a reasonable jury to find in [his] favor." *Williams*, 194 W.Va. at 60, 459 S.E.2d at 337. The circuit court did not err in granting summary judgment on the spoliation of evidence issues in favor of respondents.